**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Nicholas HUDSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 2008.
Filed Aug. 20, 2008.

---

Brian J. Collins, Allentown, for appellant.

Joseph Stauffer, Assistant District Attorney, Allentown, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., PANELLA, and KELLY, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Nicholas Hudson, appeals from the judgment of sentence entered June 14, 2006, by the Honorable Brian J. Johnson, Court of Common Pleas of Lehigh County. After careful review, we affirm.

¶ 2 Shortly after midnight in the early morning of December 6, 2001, Daniel Cruz and his girlfriend, Joeli Maldonado, were seated next to each other at a diner in Allentown, after enjoying a night out on the town. As they awaited the delivery of their order from the kitchen, a black male wearing an ENYCE jacket entered the diner and approached their table. Upon arriving at the table, the man drew a handgun, shot Cruz multiple times, and then fled the restaurant. Cruz died as a result of wounds suffered from the shooting.

¶ 3 During the subsequent investigation of this crime, Maldonado was shown several police mug books. While Maldonado noted that several photos resembled the shooter, she did not positively identify a single individual as the shooter. For two years, the investigation remained in limbo.

¶ 4 In 2004, Abdul Hameed Muhammad informed the police that the murder weapon could be found amongst evidence that the police had seized in an unrelated raid of Hudson's brother's home in 2003. Upon testing the weapon, the police learned that its ballistics matched the bullets and casings found at the scene of Cruz's murder. Muhammad further informed the police

that Hudson had told Muhammad that he had killed Cruz in retribution for the earlier shooting of his brother by "Spanish guys from the block."

¶ 5 Thereafter, the Allentown Police circulated a "wanted" poster of Hudson, and in September, 2004, the police in Goldsboro, North Carolina located Hudson. After the officers identified themselves, Hudson fled on foot. He was eventually apprehended and extradited to Pennsylvania.

¶ 6 Following trial, a jury convicted Hudson of murder in the first degree,[1] and recklessly endangering another person.[2] The jury subsequently concluded that the death sentence was not appropriate, and the trial court consequently sentenced Hudson to life imprisonment. Hudson filed post-sentence motions, which the trial court denied. This timely appeal followed.

¶ 7 On appeal, Hudson raises the following issues for our review:

A. Whether the Trial Court erred by not granting Appellant's motion for mistrial after Commonwealth's witness testified that Appellant "had to see his P.O. (probation officer)?

. . .

B. Were the guilty verdicts against the weight of the evidence?

. . .

C. Did the Court err in not giving a *Kloiber* instruction?

. . .

D. Did the Court err in allowing the Commonwealth to introduce evidence of alleged flight?

---

1. 18 PA. CONS.STAT. ANN. § 2502(a).

2. 18 PA. CONS.STAT. ANN. § 2705.

. . .

E. Did the Court err in instructing the jury on the issue of flight as consciousness of guilt?

. . .

F. Did the Court err in instructing the jury on the concepts of accomplice and conspiratorial liability?

Appellant's Brief, at 3.

¶ 8 In his first issue on appeal, Hudson contends that the trial court should have declared a mistrial when a Commonwealth witness testified that he believed Hudson was in Allentown to see his probation officer. Our standard of review for this claim is well settled:

> A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion by one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.
>
> An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super.2003) (citations, footnotes, and internal quotes omitted).

¶ 9 Evidence of prior crimes or bad acts may not be presented at trial to establish the defendant's criminal character or proclivities. *Commonwealth v. Pa-*

*dilla*, 923 A.2d 1189, 1194 (Pa.Super.2007), *appeal denied*, 594 Pa. 696, 934 A.2d 1277 (2007). This rule is violated where evidence presented to the jury either expressly, or by reasonable implication, indicates that the defendant has engaged in other criminal activity. *Id.*, at 1195. However, mere passing reference to prior criminal activity is insufficient to establish improper prejudice by itself. *Id.* The inquiry into whether prejudice has accrued is necessarily a fact specific one. *Id.*

¶ 10 If evidence of prior criminal activity is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction to the jury. *Id.*, at 1196. However, the instruction must be clear and specific, and must instruct the jury to disregard the improper evidence. *Id.*

¶ 11 In the case *sub judice*, Hudson filed a motion *in limine* seeking the preclusion of any evidence of Hudson's prior convictions. The trial court granted the motion upon agreement of counsel. However, during his direct examination, Abdul Hameed Muhammad provided the following testimony:

Q. Do you know where they went after that?

A. To New York.

Q. But did he [Hudson] ever show back up in Allentown?

A. Yes.

Q. Do you remember when that was?

A. He had to see his PO or something.

Q. When?

A. I think he had to go see his parole officer or probation officer . . .

N.T., 3/9/2006, at 164–165. After counsel for Hudson objected, the trial court gave the following cautionary instruction to the jury:

The fact that Mr. Muhammad has testified that he thought the Defendant might be going to see a probation officer has absolutely no bearing on this case, whether or not this is true is unknown. You may not take that statement by this witness as having any bearing whatsoever on your decision as to your verdict in this trial.

*Id.*, at 170.

¶ 12 Based upon this record, we conclude that Muhammad's testimony regarding Hudson's probation or parole officer was inadvertent, even when viewed in light of Hudson's motion *in limine*. The prosecutor did not ask a question that could have been reasonably foreseen to elicit evidence of Hudson's prior criminal activities. Furthermore, Muhammad's testimony constituted a mere passing reference to Hudson's prior criminal activity that the trial court's cautionary instruction adequately cured. Judge Johnson not only clearly instructed the jury to disregard the testimony when deliberating on the verdict, he also expressly instructed them that they had no basis upon which to determine whether the testimony itself was true. When viewed in light of the substantial circumstantial evidence presented by the Commonwealth at trial indicating Hudson's guilt, we conclude that Hudson did not suffer improper prejudice from this reference to his prior criminal activity. As a result, we conclude that Hudson's first issue on appeal merits no relief.

 ¶ 13 Hudson next argues that the trial court erred in not finding that the guilty verdicts were against the weight of the evidence presented at trial. As well stated by our esteemed colleague, the Honorable Correale F. Stevens,

[b]efore a trial court may award a new trial on the ground that the [verdict is against the weight of the evidence,] it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super.2004) (citation omitted), *appeal denied*, 583 Pa. 689, 878 A.2d 864 (2005).

¶ 14 In addressing Hudson's weight claim, the trial court opined that

the trial contained significant corroborating evidence from the Commonwealth's witnesses, including, *inter alia:* Joeli Maldonado's testimony and eyewitness identification of the Defendant; Hammeed Muhammad's information regarding the shooting and the Defendant that led the police to open the "cold case;" Aida Perez's testimony regarding the Defendant the night of the shooting; Stepahnie Rinebold's testimony regarding the Defendant the night of the shooting; and Allentown police officers' testimony about locating the weapon, thereby validating Mr. Muhammad's testimony.

Trial Court order, 11/1/2006, at 1, n. 1. After reviewing the certified record in its entirety, we cannot conclude that the trial court abused its discretion in finding that the verdict did not shock its conscience. Accordingly, we conclude that Hudson's second issue on appeal merits no relief.

 ¶ 15 In his third issue on appeal, Hudson argues that the trial court erred when it denied his request to provide a

*Kloiber*[3] charge to the jury. Hudson's argument centers on his contention that Joeli Maldonado identified several other men as the shooter before finally identifying Hudson. Our Supreme Court in *Kloiber* stated that

> where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify **defendant** on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A.2d 820, 826–27 (1954) (emphasis added).

¶ 16 In the case *sub judice,* Hudson argues that Maldonado was not in a position to clearly observe the man who shot Daniel Cruz, as there was testimony that the shooter had his head covered by a hood. However, Maldonado testified that when she saw Hudson shoot Cruz, he had nothing covering his face, and that he was wearing a distinctive jacket. N.T., 3/13/2006, at 84–85. Because of the jacket, she recognized Hudson as a man who had interacted with Cruz at a bar earlier in the evening. *Id.,* at 69–71. Maldonado testified that she was "1000% sure" that Hudson was the shooter. *Id.,* at 120.

¶ 17 Furthermore, while Maldonado had identified other men from photo arrays as looking like the shooter, it was not until she was shown a picture of Hudson that she made a positive identification. *Id.,* at 114. While, on the day of the crime, Maldonado stated that Nicholas Ross "looks like a dead ringer to me," it must be noted that this does not constitute a positive identification. Similarly, Maldonado later picked out a photo of Devon Anglin, stating "it looked like him. It sure looked close." Once again, this statement does not constitute a positive identification.

¶ 18 Under these circumstances, we cannot conclude that Hudson has established the necessity of a *Kloiber* charge. It is at best unclear whether the shooter's face was obstructed by a hood, and even given that fact, it is undisputed that the shooter was standing very close to Maldonado when he shot Cruz. Once Maldonado was shown a picture of Hudson, her identification was unqualified and adamant. Accordingly, we conclude that Hudson has failed to establish that a *Kloiber* charge was necessary, and therefore his third issue on appeal merits no relief.

¶ 19 Hudson's next two issues on appeal concern his alleged flight from the Goldsboro, North Carolina police when he was apprehended in September of 2004. When a person knows that he is wanted in connection with a criminal investigation, and flees or conceals himself, such conduct is admissible as evidence of consciousness of guilt. *Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294 (2002). Evidence of flight or concealment can be established through eyewitness testimony. *Commonwealth v. Coyle,* 415 Pa. 379, 203 A.2d 782, 790 (1964). A jury may infer that the defendant was aware of his fugitive status from the circumstances surrounding his flight. *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025 (1996).

¶ 20 In the present case, the Commonwealth presented evidence that Hudson left for New York immediately after the shooting. N.T., 3/9/2006, at 164. Before leaving for New York, Hudson told his brother "yo I love you, I have to go, watch the news." N.T., 3/10/2006, at 11. Furthermore, the Commonwealth presented

---

**3.** *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (Pa.1954).

evidence that when the Goldsboro police approached Hudson and identified themselves, Hudson stated "I'm not going anywhere," and then jumped a fence and fled on foot. *Id.,* 178–180. In light of all this evidence, we conclude that the trial court did not err in admitting evidence of Hudson's flight from police, nor did it err in instructing the jury regarding the inference of guilt that could be drawn from such evidence. Accordingly, we conclude that Hudson's fourth and fifth issues on appeal merit no relief.

¶ 21 In his final issue on appeal, Hudson contends that the trial court erred in instructing the jury on accomplice liability. Upon review of the certified record, we conclude that this issue is moot. On the verdict sheet, the jury indicated that it found Hudson guilty as the "Shooter". Verdict Sheet, at 1. The jury declined to indicate that it found Hudson guilty as an "Accomplice". *Id.* Accordingly, even if the instruction were in error, it had no effect on the verdict rendered by jury. We therefore conclude that Hudson's final issue on appeal merits no relief.

¶ 22 As we conclude that none of Hudson's issues on appeal merit relief, we affirm the judgment of sentence.

¶ 23 Judgment of sentence affirmed. Jurisdiction relinquished.

¶ 24 Judge Kelly concurs in the result.