J.S36036/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL HART, | : | |
| | : | |
| Appellant | : | No. 1007 EDA 2013 |

Appeal from the Judgment of Sentence March 7, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0009045-2010

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED AUGUST 11, 2014**

Appellant, Nathaniel Hart, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and his conviction for possession with intent to deliver a controlled substance ("PWID").[1]  Appellant contends the court erred in denying his motion *in limine* to preclude the testimony of Detective Barbara Weldon, challenges the sufficiency of the evidence, and argues the court erred in denying his motions for acquittal and mistrial.  We affirm. [2]

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] We note that the Commonwealth did not file a brief in the case *sub judice*.

The facts of this case, as summarized by the trial court are as follows:

At trial, the Commonwealth presented testimony from Detective [James] Owens, Lieutenant [Charles] Jackson, Detective Weldon, and Police Officer [Kevin] Keys while [Appellant] presented testimony from Stacey Hammond. . . .

5217 West Clarkson Avenue is a two-story row house located in Northwest Philadelphia. At about 6:00 a.m. on May 28, 2010, approximately 18 to 22 Philadelphia Police Officers went to this location to execute an arrest warrant for [Appellant]. Police knocked and announced their presence; no one responded. They subsequently battered down the front door. Approximately ten officers entered the house while the other officers remained outside and secured the perimeter of the property.

The officers who entered the living room immediately recognized the smell of marijuana permeating the air. The officers divided into two search teams: one team scanned the main floor while the other team ascended the stairs to the second floor.

The main floor consisted of a living room, dining room, and kitchen. The rooms were empty except for a bag of fertilizer in the dining room closet. The officers quickly cleared the main floor and proceeded down a flight of stairs into the basement. Similar to the main floor, the basement was devoid of any furniture; however, in the basement, police found a 12-gram bag of cultivated marijuana, mail addressed to [Appellant], a magazine titled "The Growers Edge," and a mattress, which is where they located [Appellant], sleeping and undressed. Before officers allowed [Appellant] to dress, they swept his pants for weapons. In one pocket, police found 31 $100 bills, five $50 bills, 99 $20 bills, and one $10 bill, amounting to $5,340. Once dressed, [Appellant] was taken into custody.

Meanwhile, the other team of officers simultaneously searched the second floor of 5217 West Clarkson Avenue. The second floor had three bedrooms; two were functioning as an urban marijuana farm. In all, these two bedrooms contained 58 plants in various stages of growth as well as heat lamps, thermometers, irrigation and ventilation systems, and other paraphernalia used to grow and cultivate marijuana. Although plants were absent from the back bedroom, this room contained equipment similar to that found in the other two rooms.

After securing a search warrant, Philadelphia Police confiscated the 58 plants and the items used to aid in their cultivation.

Trial Ct. Op., 11/18/13, at 2-3 (references to the record omitted).

Following the jury verdict of guilty of PWID, Appellant was sentenced to five to ten years' imprisonment. This timely appeal followed. Appellant filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

1. Did the court err by denying Appellant's motion *in limine* to preclude the testimony of Detective [Barbara] Weldon, as this testimony consisted of inculpatory evidence that was not disclosed until the eve of trial?

2. Was the evidence was (sic) insufficient to establish that Appellant manufactured, delivered, or possessed with intent to manufacture or deliver a controlled substance, where the evidence presented at trial failed to establish that Appellant was in constructive possession of the marijuana at the home where he was sleeping?

3. Did the court err by denying Appellant's motion for acquittal, as the evidence presented at trial at the close of the Commonwealth's case failed to establish that Appellant

constructively possessed the marijuana discovered at the home where Appellant was sleeping?

4. Did the court commit error by denying Appellant's motion for mistrial, after detective Weldon testified that she had obtained information for the arrest of Appellant from Appellant's criminal history, thereby notifying the jury that Appellant had engaged in prior criminal activity.

Appellant's Brief at 2-3.

First, Appellant avers that the trial court erred in denying his motion *in limine* to preclude the testimony of Detective Weldon because it consisted of inculpatory evidence that was not disclosed until the eve of trial, *viz.*, the Detective's hand-written note memorializing her prior observation of Appellant at the property on May 19, 2010. *Id.* at 8-9. Appellant contends that because he was not made aware until the eve of trial of Detective Weldon's in-person identification of him accessing the Clarkson Street property with a key on May 18th and May 19th, and the circumstances surrounding the identification, he was unable to formulate an effective cross-examination or investigate a possible alibi defense. *Id.* at 10, 12. Appellant argues this omission constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

> When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard. "[A] motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, [therefore] our standard of review . . . is the same as that of a motion to suppress." The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion.

*Commonwealth v. Rosen*, 42 A.3d 988, 993 (Pa. 2012) (citations omitted).

After careful review of the record, including the trial testimony, the Appellant's brief, and the decision of the Honorable Ann M. Butchart, we deny relief on Appellant's first issue on the basis of the trial court's opinion. *See* Trial Ct. Op. at 4-9 (holding late disclosure of note did not constitute exculpatory evidence nor was it material evidence that would have changed verdict).

We address Appellant's second and third issues together because they are related. Appellant contends the evidence was insufficient to establish that he was in constructive possession of the marijuana discovered at the property where he was sleeping. He avers "that, at most, the evidence showed that he was merely present in the home." Appellant's Brief at 13. He argues that the evidence only established that he "was sleeping in a home that was used for growing marijuana." *Id.* at 23. Appellant concludes that because the evidence was insufficient, the trial court erred in denying his motion for judgment of acquittal. *Id.* at 34.

Our standard of review of a sufficiency of the evidence challenge is to

> determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the

witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), (citation omitted), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

Section 780-113(a)(30) provides:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

In **Brown**, this Court opined:

Because [the defendant] was not found with contraband on his person, the Commonwealth was required to establish that [the defendant] had constructive possession of the seized items to support his convictions.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious

dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Brown**, 48 A.3d at 430 (citations omitted).

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Graham**, 81 A.3d 137, 142 (Pa. Super. 2013) (citation omitted), *appeal denied*, 93 A.3d 462 (Pa. 2014).

Instantly, as in **Brown**, the contraband was not found on Appellant's person. Therefore, the Commonwealth had to establish that he had constructive possession of it. **See Brown**, 48 A.3d at 430.

The trial court opined:

Here, [Appellant] insists that he is the victim; he was simply in the wrong place at the wrong time. To support his theory, [Appellant] presented evidence that in May 2010, he resided at 257 West Zeralda Street with his girlfriend and her two children. On May 27, 2010, after a late-night argument, he gathered some personal items, including $5,000 and important mail documents, and left his home to sleep at his friend['s] property located at 5217 West Clarkson Avenue. When one considers the evidence as a whole, as the law requires, the idea that [Appellant] was merely an overnight guest at 5217 West Clarkson Avenue is not credible.

\* \* \*

[Appellant's] presence at 5217 West Clarkson Avenue on May 28, 2010 was not coincidental. Nine days earlier, on May 19, 2010, police confirmed that [Appellant] had

free, unfettered access to this property. On that date, Detective Weldon observed [Appellant] exit 5217 West Clarkson Avenue at 1:34 p.m. and lock the front door with a key. [Appellant's] unrestricted access to 5217 West Clarkson Avenue indicated that he had the power to control the narcotics. To argue to the contrary simply defies logic. Thus, the issue is whether [Appellant] had the intent to control the contraband. The evidence shows that he did.

In addition to the 58 plants found inside the property, evidence supporting the fact finders[,] determination that [Appelllant] had conscious dominion over the marijuana includes, but is not limited to the 31 $100 bills, five $10 bills, and 99 $20 bills amounting to more than $5,000; a 12-gram bag of cultivated marijuana; and although it contained his West Zeralda Street address, [Appellant's] mail. The cultivated marijuana, paired with the large collection of currency, strongly indicate that [Appellant] engaged in street drug sales. [Appellant's] mail from late 2009—discovered in plain view, not hidden in an overnight bag—suggests that this was not his first time present at 5217 West Clarkson Avenue.

Trial Ct. Op. at 11-12. We decline to upset the court's credibility determinations and discern no error. **See Brown**, 48 A.3d at 430. Therefore, because Appellant's sufficiency of the evidence claim is unavailing, his claim that the court erred in denying his motion for acquittal is without merit. **See Graham**, 81 A.3d at 142.

Lastly, Appellant contends the trial court erred in denying his motion for a mistrial because Detective Weldon's "testimony irreparably prejudiced Appellant's right to a fair trial by creating the inference that Appellant had engaged in prior criminal activity." Appellant's Brief at 37. Appellant concedes that "the jury was made aware that Appellant was arrested on a

warrant for an unrelated matter." ***Id.*** at 39. Appellant avers that "[t]he reasonable inference from Detective Weldon's statement . . . is that Appellant had a criminal record including at least four separate cases." ***Id.*** at 40.

Appellant claims the following testimony elicited from Detective Weldon by the Commonwealth was grounds for a mistrial.

> [The Commonwealth]: Detective, those documents you've been handed, do you recognize those?
>
> A: Yes, I do.
>
> Q: What are those documents?
>
> A: The first one is an affidavit of probable cause and the second is a warrant arrest.
>
> Q: And on those documents there, is the name of [Appellant], correct?
>
> A: That's correct.
>
> Q: And there's also a number of addresses; there's about five addresses on there?
>
> A: That's correct.
>
> Q: One of those addresses, Detective, is 5217 West Clarkson Street?
>
> A: That's correct.
>
> Q: Detective, can you explain, why—first, why is that referenced on the warrant, in the affidavit?
>
> A: During this time, when we do an affidavit of probable cause these other addresses, the last four are the addresses that are listed on his criminal—

[Counsel for Appellant]: Objection, Judge. Can we see you at sidebar, please?

The Court: Yes.

(Whereupon, a sidebar discussion was held off the record)

The Court: The jury will disregard the last answer to that last question, and I would direct the Commonwealth to rephrase that question.

N.T. at 114-15.

The court denied the request for a mistrial, noting "that the Jury was already aware that there was a non-related matter, so that [Appellant's] involvement with the criminal justice system had already been established . . . ." *Id.* at 154-55.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." A trial court may grant a mistrial only "where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citations omitted).

In *Commonwealth v. Hudson*, 955 A.2d 1031 (Pa. Super. 2008), the defendant filed a motion *in limine* to exclude any reference to his prior

convictions, which the trial court granted. ***Id.*** at 1034. The defendant contended the trial court should have declared a mistrial after a witness for the Commonwealth testified that he thought the defendant was in town to see his parole or probation officer. ***Id.*** This Court opined:

> Evidence of prior crimes or bad acts may not be presented at trial to establish the defendant's criminal character or proclivities. This rule is violated where evidence presented to the jury either expressly, or by reasonable implication, indicates that the defendant has engaged in other criminal activity. However, mere passing reference to prior criminal activity is insufficient to establish improper prejudice by itself. The inquiry into whether prejudice has accrued is necessarily a fact specific one.
>
> If evidence of prior criminal activity is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction to the jury.

***Id.*** (citations omitted).

"The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Spotz***, 896 A.2d 1191, 1224 (Pa. 2006) (citation omitted). Instantly, after Detective Weldon uttered the word "criminal," counsel objected and the court immediately gave a curative instruction. ***See Hudson***, 955 A.2d at 1034. The jury is presumed to follow the court's instruction. ***See Spotz***, 896 A.2d at 1224.

Prior to Detective Weldon's testimony, reference had been made to the multiple addresses appearing on Appellant's arrest warrant. Detective

Owens testified and had referred to Appellant's arrest warrant and the multiple addresses appearing on it as follows:

> Q: Detective, the document that's just been handed to you, what's that document?
>
> A: This is a copy of the warrant of arrest for [Appellant].
>
> Q: And, Detective, to be clear, there is more than one address on that warrant, correct?
>
> A: That's correct.
>
> Q: But one of those addresses is 5217 West Clarkson Street?
>
> A: Right.  It's the first address which is usually the primary address on the warrant.

*Id.* at 33-34.  Appellant did not raise an objection to the testimony.

The trial court opined that "the jury was fully aware that this case arose from an execution of an arrest warrant for an unrelated matter."  Trial Ct. Op. at 14.  We agree.  The mere passing reference by Detective Weldon was insufficient to establish prejudice warranting a mistrial.  ***See Hudson***, 955 A.2d at 1034.  We discern no abuse of discretion by the trial court in denying the motion for a mistrial.  ***See Chamberlain***, 30 A.3d at 422.

Judgment of sentence affirmed.

J. S36036/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/11/2014</u>



FILED

NOV 18 2013

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0009045-2010

v.        CP-51-CR-0009045-2010 Comm. v. Hart, Nathaniel L.
Opinion        1007 EDA 2013

NATHANIEL HART



7086249351

**OPINION**

BUTCHART, J.                                  November 18, 2013

## PROCEDURAL BACKGROUND

Philadelphia Police, armed with an arrest warrant for Defendant Nathaniel Hart, entered 5217 West Clarkson Avenue at 6:00 a.m. on May 28, 2010 and discovered Defendant in the basement of the property. Defendant was not alone; 58 marijuana plants and other drug paraphernalia were found throughout the house. Defendant was arrested and after a preliminary hearing, was held for court on, *inter alia*, possession with intent to deliver. (35 § 780-113 §A30).

Defendant was tried before a jury of his peers on March 6 and March 7, 2013. At the conclusion of the trial, the jury returned a guilty verdict for possessing marijuana with the intent to deliver. Immediately following the verdict, Defendant received a five to 10 year sentence to be served at a state correctional institution.

On April 1, 2013, Defendant filed a timely notice of appeal followed by a requested notice of matters complained of on appeal. In his Pa.R.A.P. 1925(b) statement, he raises the following four issues: 1) this Court committed error by denying Defendant's motion *in limine* to preclude the testimony of Detective Weldon, as Detective Weldon's testimony consisted of

1

inculpatory evidence that was not disclosed until the eve of trial; 2) the evidence was insufficient to support Defendant's conviction because the evidence presented at trial failed to establish that Defendant was in constructive possession of the marijuana discovered at the home where he was sleeping; 3) this Court erred by denying Defendant's motion for judgment of acquittal because the evidence presented at trial at the close of the Commonwealth's case failed to establish that Defendant constructively possessed the marijuana discovered at the home where he was sleeping; and 4) this Court committed error by denying Defendant's motion for mistrial, after Detective Weldon testified that she had obtained information for the arrest of Defendant from his criminal history, thereby notifying the jury that he had engaged in prior criminal activity. Statement of Matters Complained of on Appeal at ¶¶ 1-4.

## FACTUAL BACKGROUND

At trial, the Commonwealth presented testimony from Detective Owens, Lieutenant Jackson, Detective Weldon, and Police Officer Keys while Defendant presented testimony from Stacey Hammond. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

5217 West Clarkson Avenue is a two-story row house located in Northwest Philadelphia. At about 6:00 a.m. on May 28, 2010, approximately 18 to 22 Philadelphia Police Officers went to this location to execute an arrest warrant for Defendant. N.T., 3/06/2013, pp. 33-34. Police knocked and announced their presence; no one responded. N.T., 3/06/2013, p. 35. They subsequently battered down the front door. N.T., 3/06/2013, p. 36, 49. Approximately ten officers entered the house while the other officers remained outside and secured the perimeter of the property. *Id.*

2

The officers who entered the living room immediately recognized the smell of marijuana permeating the air. N.T., 3/06/2013, p. 36. The officers divided into two search teams: one team scanned the main floor while the other team ascended the stairs to the second floor. N.T., 3/06/2013, pp. 36, 49.

The main floor consisted of a living room, dining room, and kitchen. The rooms were empty except for a bag of fertilizer in the dining room closet. N.T., 3/06/2013, pp. 37, 52. The officers quickly cleared the main floor and proceeded down a flight of stairs into the basement. N.T., 3/06/2013, p. 37. Similar to the main floor, the basement was devoid of any furniture; however, in the basement, police found a 12-gram bag of cultivated marijuana, mail addressed to Defendant, a magazine titled "The Growers Edge", and a mattress, which is where they located Defendant, sleeping and undressed. N.T., 3/06/2013, pp. 38, 71, 80, 82, 84. Before officers allowed Defendant to dress, they swept his pants for weapons. In one pocket, police found 31 $100 bills, five $50 bills, 99 $20 bills, and one $10 bill, amounting to $5,340. N.T., 3/06/2013, p. 57. Once dressed, Defendant was taken into custody. N.T., 3/06/2013, p. 37.

Meanwhile, the other team of officers simultaneously searched the second floor of 5217 West Clarkson Avenue. N.T., 3/06/2013, p. 39. The second floor had three bedrooms; two were functioning as an urban marijuana farm. N.T., 3/06/2013, pp. 39, 67. In all, these two bedrooms contained 58 plants in various stages of growth as well as heat lamps, thermometers, irrigation and ventilation systems, and other paraphernalia used to grow and cultivate marijuana. N.T., 3/06/2013, p. 70; C-10(a) – (f). Although plants were absent from the back bedroom, this room contained equipment similar to that found in the other two rooms. N.T., 3/06/2013, pp. 39, 74.

After securing a search warrant, Philadelphia Police confiscated the 58 plants and the items used to aid in their cultivation. N.T., 3/06/2013, p. 70; C-4.

3

## DISCUSSION

In his 1925(b) statement, Defendant claims that 1) this Court wrongfully denied his pre-trial motion *in limine*; 2) the Commonwealth presented insufficient evidence to support a guilty verdict; 3) this Court wrongfully denied his motion for judgment of acquittal; and 4) this Court wrongfully denied his motion for a mistrial. For the reasons set forth below, Defendant's claims are without merit and the judgment of sentence should be affirmed.

1. **This Court did not err in denying Defendant's motion *in limine* to preclude the testimony of Detective Weldon.**

A motion *in limine* refers to a motion made before or during trial, outside the presence of a jury, where the trial court is asked to rule upon the inclusion or exclusion of evidence. Commonwealth v. Padilla, 923 A.2d 1189, 1193-94 (Pa.Super. 2007). The trial court will preclude evidence so prejudicial that no instruction could cure the harm to the defendant. *Id.* Such preclusion is intended to prevent prejudicial error. *Id.* When ruling on a trial court's decision to grant or deny a motion *in limine*, the Superior Court must apply an evidentiary abuse of discretion standard of review. *Id.*

Turning to the case at hand, before trial commenced on March 6, 2013, Defendant moved *in limine* to preclude Detective Weldon from testifying that at 1:34 p.m. on May 19, 2010, she observed Defendant exit 5217 West Clarkson Avenue and lock the front door. The only record of this observation was the Detective's hand-written note on a manila envelope contained in the Philadelphia Police file. On the night before trial, as Detective Weldon prepared for trial, she discovered this hand-written note and informed the prosecutor of its existence. The prosecutor then promptly notified Defendant and provided a copy before trial began on March 6, 2013. This late notification, in Defendant's opinion, amounted to a discovery violation. N.T., 3/06/2013, pp. 5-20, 107-112.

4

To support his position, Defendant argued that this "absolutely inculpatory material ... was not provided," and as a result, he did not "have ... an opportunity ... to find out if [Defendant] was in fact somewhere else on May 19." N.T., 3/06/2013, p. 12. Defendant continued that "this puts us at a disadvantage with respect to impeaching [Detective Weldon] about her observations ... this information should be precluded and my client is being prejudiced by surprise." N.T., 3/06/2013, 109.

This Court denied Defendant's motion *in limine*. N.T., 3/06/2013, 109-10. Prior to trial, Defendant possessed the arrest warrant and affidavit of probable cause signed by Detective Weldon on May 26, 2010. The Commonwealth asserted that these documents contained all pertinent information regarding Detective Weldon's investigation in May 2010 except for the time she observed Defendant exit 5217 West Clarkson Avenue of May 19, 2010. As such, Defendant had ample notice and adequate documentation regarding the possible contents of Detective Weldon's testimony. This Court did not abuse its discretion in denying this motion.

Yet, on appeal, Defendant contends this Court erred when it denied the motion *in limine* to preclude testimony from Detective Weldon because it "consisted of inculpatory evidence ... not disclosed until the eve of trial." This claim is meritless because "one does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434 (1995).

In the landmark decision of Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective

5

of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). In our Commonwealth, it is well-established that a defendant bears the burden of proving three elements to formulate a valid Brady violation: 1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; 2) the evidence was favorable to the accused; and 3) the evidence was material to the accused. Commonwealth v. Paddy, 15 A.3d 431, 450 (Pa. 2011).

Brady did not create an "open file" policy or a general right of discovery to a criminal defendant; instead, it created a limited prosecutorial duty. Paddy, 15 A.3d at 450-51. As such, the Commonwealth need not disclose all exculpatory and impeachment evidence, only that which is deemed material, and the burden rests with defendant to prove that such evidence was withheld or suppressed. *Id.*

Evidence is favorable if it has exculpatory or impeachment value. Exculpatory evidence is evidence that extrinsically tends to establish that a defendant is innocent of the crimes charged. Commonwealth v. Hicks, 411 A.2d 1220 (Pa.Super. 1979). Because a witness' credibility may be determinative of guilt or innocence, prosecutors are also mandated to disclose evidence of an impeaching nature. Giglio v. United States, 405 U.S. 150, 154 (1972). Brady, however, does not require "the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." Paddy, 15 A.3d at 451 (quoting Commonwealth v. Lambert, 884 A.2d 848, 856 (Pa. 2005); but see Commonwealth v. Green, 640 A.2d 1242, 1245 (Pa. 1994) (courts must "consider any adverse effect that the prosecutor's failure to disclose might have had on not only the presentation of the defense at trial, but the preparation of the defense as well.").

6

Evidence is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Paddy, 15 A.3d at 450. A "reasonable probability" of a different result is shown when the government's evidentiary suppression "undermines confidence in the outcome of trial." Kyles, 514 U.S. at 434. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality." United States v. Agurs, 427 U.S. 97, 109-10 (1979).

Prior to the start of trial, Defendant was well-aware of the evidence in question. The Commonwealth appropriately provided Defendant with all available discovery, including information regarding Detective Weldon's observations from May 2010. Accordingly, Defendant knew the basis of this investigation and knew it would supply the content of Detective Weldon's testimony. Nonetheless, Defendant appeared to be shocked and appalled when he learn of this "inculpatory" and "very damning" evidence documented in the Detective's hand-written note. N.T., 3/06/2013, pp. 12, 19.

As outlined by Brady, inculpatory evidence, by definition, is neither exculpatory nor is it favorable. Thus, the Commonwealth, as Defendant's terminology appears to concede, was not obliged to disclose this note. Even so, Defendant argues that the Commonwealth was obligated to disclose this information in a timelier fashion, and if it had done so, a defense investigation may have lead to favorable exculpatory evidence. N.T., 3/06/2013, p. 11. This bald assertion contains no merit as it is nothing more than speculation. As already stated, Brady does not mandate the revelation of evidence that "... might merely form the groundwork for possible arguments or defenses."[1]

---

[1] It should be noted this Court offered Defendant a continuance to see if Defendant was "in fact, somewhere else" on May 19, 2010. N.T., 3/06/2013, pp. 109-10; see also Pa.R.Crim.P. 573(E) (If at any time during the course of the

7

While the late disclosure raises questions regarding the credibility of Detective Weldon, it does not rise to the level of a discovery violation. Courts have construed impeachment evidence to include "any implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony" Commonwealth v. Strong, 761 A.2d 1167, 1171 (Pa.Super. 2000); Commonwealth v. Spotz, 47 A.3d 63, 84 (Pa. 2012) as well as information regarding a witness's prior criminal record. Such impeachment evidence simply does not exist for the witness in question. Further, on cross-examination, Defendant effectively attacked the Detective's credibility by aggressively questioning her about her failure to properly document her surveillance of Defendant on May 19, 2010. N.T., 3/06/2013, pp. 119-26.

Moreover, the evidence in question is not – and cannot – be construed as material because even if Defendant had received it earlier, it would not have changed the verdict. The Commonwealth's evidence against Defendant was overwhelming. Defendant's arrest warrant listed his address as 5217 West Clarkson Avenue. Police went to this address to execute this arrest warrant at 6:00 a.m. on May 28, 2010 and found Defendant – and only Defendant – in the basement of an urban marijuana farm. In addition to the 58 marijuana plants found in the home, police discovered Defendant's mail, a 12-gram bag of cultivated marijuana, as well as 31 $100 bills, five $50 bills, and 99 $20 bills amounting to more than $5,000. This circumstantial evidence alone was sufficient to convict Defendant of possession with intent to deliver. The information supplied by Detective Weldon – that she observed Defendant exit 5217 West Clarkson Avenue and lock the front door at 1:34 p.m. on May 19, 2010 – only strengthened the

---

proceedings it is brought to the attention of the court that a party has failed to comply with this [pretrial discovery and inspection] rule, the court ... may grant a continuance.) Defendant declined this Court's invitation. *Id.* Accordingly, Defendant is responsible for any prejudice that may have result from this late-revealed piece of information.

8

Commonwealth's case. Accordingly, Defendant cannot meet his burden in showing the Commonwealth suppressed favorable evidence, nor can he show that this evidence was material.

Alternatively, Pa.R.Crim.P. 573 (B)(1)(b) mandates discovery of "any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth." If Defendant was referring to 573(B)(1)(b) in his 1925(b) statement, he failed to direct this Court's attention to this rule of procedure. See Commonwealth v. Lemon, 804 A.2d 31, 37 (Pa.Super. 2002) ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."). Nonetheless, a discovery violation argument based upon this rule is still meritless. The inculpatory evidence in the instant matter is not a confession nor a statement made to Philadelphia Police; rather, it pertains to an observation of a Philadelphia Police Officer. Accordingly, any reliance on this rule is simply misplaced.

2. **The Commonwealth presented sufficient evidence to find Defendant guilty of constructively possessing the marijuana discovered at the property where he was sleeping.**

Defendant alleges that he was merely an overnight guest sleeping at 5217 West Clarkson Avenue, and thus, the Commonwealth presented insufficient evidence to establish that he constructively possessed the marijuana found inside the house. The facts do not support this point.

When reviewing the sufficiency of the evidence, evidence must be viewed in the light most favorable to the Commonwealth, as verdict winner, which is entitled to all favorable inferences that may be drawn therefrom. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa.

9

2000). The Commonwealth may sustain its burden by proving every element of the crime by means of wholly circumstantial evidence. Commonwealth v. Muniz, 5 A.3d 345, 348 (Pa.Super. 2010). This evidence does not need to preclude every possibility of innocence and any doubt regarding a defendant's guilt may be resolved by the fact finder. *Id.*

Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience, and the laws of nature the evidence is insufficient as a matter of law. Commonwealth v. Santana, 333 A.2d 876, 878 (Pa. 1975); see also Commonwealth v. Karkaria, 625 A.2d 1167, 1170 (Pa. 1993) (evidence is insufficient when the "evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture."). A successful claim challenging the sufficiency of the evidence would preclude retrial under the double jeopardy provisions of the Fifth Amendment of the United States Constitution and Article, I, Section 10 of the Pennsylvania Constitution. Widmer, A.2d at 751.

In a possession with intent to deliver charge, such as the one present in the instant case, the Commonwealth must prove that a defendant knowingly or intentionally possessed the illegal drug. 35 P.S. § 780-113. Possession can be proven via actual possession or constructive possession. Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983). Here, because the marijuana was not found on Defendant's person, the Commonwealth used the theory of constructive possession.

Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. Muniz, 5 A.3d at 348. Constructive possession is the ability to exercise a "conscious dominion" over the illegal substance. Macolino, 469 A.2d at 134. A conscious dominion is the power to control the contraband and the intent to exercise that

10

control. *Id.* A necessary prerequisite of intent to control is proof that the defendant had knowledge of the existence and location of the narcotics. <u>Commonwealth v. Thompson</u>, 428 A.2d 223, 224 (Pa.Super. 1981). The requisite knowledge and intent may be inferred from examination of the totality of the circumstances. *Id.*

Here, Defendant insists that he is the victim; he was simply in the wrong place at the wrong time. To support his theory, Defendant presented evidence that in May 2010, he resided at 257 West Zeralda Street with his girlfriend and her two children. N.T., 3/07/2013, pp. 18-19. On May 27, 2010, after a late-night argument, he gathered some personal items, including $5,000 and important mail documents, and left his home to sleep at his friend Eric's property located at 5217 West Clarkson Avenue. N.T., 3/07/2013, pp. 20-22, 34. When one considers the evidence as a whole, as the law requires, the idea that Defendant was merely an overnight guest at 5217 West Clarkson Avenue is not credible.

Philadelphia Police went to 5217 West Clarkson Avenue at 6:00 a.m. on May 28, 2010, just a few hours after this domestic argument, with the intent to arrest Defendant. At this time, Defendant was the sole occupant of the property. Eric was not present nor was there any indicia that anyone lived at 5217 West Clarkson Avenue. Possessions that tend to show residence – clothing, dressers, sofas, televisions – were conspicuously absent from the property. The only semblance of furniture located in the property was the mattress on which Defendant was found.

Defendant's presence at 5217 West Clarkson Avenue on May 28, 2010 was not coincidental. Nine days earlier, on May 19, 2010, police confirmed that Defendant had free, unfettered access to this property. On that date, Detective Weldon observed Defendant exit 5217 West Clarkson Avenue at 1:34 p.m. and lock the front door with a key. Defendant's unrestricted access to 5217 West Clarkson Avenue indicated that he had the power to control the narcotics.

11

To argue to the contrary simply defies logic. Thus, the issue is whether Defendant had the intent to control the contraband. The evidence shows that he did.

In addition to the 58 plants found inside the property, evidence supporting the fact finders determination that Defendant had conscious dominion over the marijuana includes, but is not limited to the 31 $100 bills, five $10 bills, and 99 $20 bills amounting to more than $5,000; a 12-gram bag of cultivated marijuana; and although it contained his West Zeralda Street address, Defendant's mail. The cultivated marijuana, paired with the large collection of currency, strongly indicate that Defendant engaged in street drug sales. Defendant's mail from late 2009 – discovered in plain view, not hidden in an overnight bag – suggests that this was not his first time present at 5217 West Clarkson Avenue.

When one connects the individual pieces of the Commonwealth's evidence together, the conclusion that Defendant constructively possessed the marijuana found inside 5217 West Clarkson Avenue is not pure conjecture; it is well supported by the evidence and the inferences drawn therefrom.

3. **This Court did not err by denying Defendant's motion for judgment of acquittal because the Commonwealth presented sufficient evidence that would allow a jury to conclude Defendant constructively possessed the marijuana discovered at the property where he was sleeping.**

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. Commonwealth v. Hutchinson, 947 A.2d 800 (Pa.Super. 2008).

This Court did not abuse its discretion when it denied Defendant's motion for a judgment of acquittal. For the reasons stated above, the Commonwealth presented sufficient evidence that Defendant possessed marijuana with the intent to deliver. As a result, this Court allowed the jury

12

to perform its function and act as fact finder. The jury then used its common sense to return a guilty verdict fully supported by the facts.

### 4. Denying Defendant's motion for a mistrial did not deprive Defendant of a fair and impartial trial.

Defendant avers in his 1925(b) statement is that this Court erred in denying his motion for a mistrial resulting from the admission of prejudicial testimony; therefore, he is entitled to a new trial.

The remedy of a mistrial is an extreme one; a mistrial must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial. Commonwealth v. Montgomery, 626 A.2d 109 (Pa. 1993); Commonwealth v. Chestnut, 512 A.2d 603 (Pa. 1986). It is primarily within the trial court's discretion to determine whether the defendant was prejudiced by the event that forms the substance of the motion. *Id.*

The Commonwealth called Detective Weldon to testify on its behalf. The following exchange occurred during direct examination:

> **Detective Weldon:** The first one is an affidavit of probable cause and the second is a warrant arrest.
>
> **Assistant District Attorney:** And on those documents there, is the name of Nathaniel Hart, correct?
>
> **Detective Weldon:** That's correct.
>
> **Assistant District Attorney:** And there's also a number of addresses; there's about five on there?
>
> **Detective Weldon:** That's correct.
>
> **Assistant District Attorney:** One of those addresses, Detective is 5217 West Clarkson Street?
>
> **Detective Weldon:** That's correct.

13

**Assistant District Attorney:** Detective, can you explain, why – first, why is that referenced on the warrant, in the affidavit?

**Detective Weldon:** During this time, when we do an affidavit of probable cause these other addresses, the last four are the addresses that are listed on his criminal –

**Detective Weldon:** Objection. Judge, can we see you at sidebar, please?

**[Sidebar]**

**This Court:** The Jury will disregard that last answer to that last question, and I would direct the Commonwealth to rephrase that question.

N.T., 3/06/2013, pp. 114-15.

Prior to trial, the Commonwealth was cautioned not to mention the details of Defendant's unrelated criminal matter. During the sidebar conversation, Defendant moved for a mistrial alleging that Detective Weldon violated this order by referencing Defendant's criminal record. This Court denied Defendant's motion for a mistrial, reasoning that the jury was fully aware that this case arose from an execution of an arrest warrant for an unrelated matter. N.T., 3/06/2013, pp. 154-55.

A defendant is entitled to a fair trial, not a perfect one; therefore, this Court did not abuse its discretion in denying Defendant's motion for a mistrial. Our Supreme Court has "never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." Commonwealth v. Morris, 519 A.2d 374, 377 (Pa. 1986), quoting Commonwealth v. Williams, 368 A.2d 249, 252 (Pa. 1977). Instead, since a jury is presumed to follow the trial court's instruction, the trial court may eradicate any prejudice resulting from a passing reference to a defendant's prior criminal activity by issuing an immediate curative instruction to the jury. Id.

14

A review of the record shows that this Court issued a prompt curative instruction, without objection from Defendant. See Morris, 519 A.2d at 378 (failure to objection to cautionary instruction indicated defendant's satisfaction). Accordingly, this Court's curative instruction was sufficient to remove any prejudice, as a jury is presumed to follow the instructions of the trial court.

## CONCLUSION

For the foregoing reasons, Defendant's assertions of error should be dismissed and the judgment of sentence entered in this matter should be affirmed.

BY THE COURT,

Date: _November 13, 2013_

_____

Honorable Ann M. Butchart

15

# IN THE COURT OF COMMON PLEAS
## FIRSTJUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION- CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0009045-2010

vs.                     :

NATHANIEL HART             :     1007 EDA 2013

## PROOF OF SERVICE

I hereby certify that I am on this 18th day of November 2013, serving the foregoing Opinion of the persons indicated below, by first class mail:

Jonathon Frisby, Esq.
2417 Welsh Road — Suite 21124
Philadelphia, PA 19114

Hugh Burns, ADA
Chief, Appeals Unit
Office of the Philadelphia District Attorney
Three South Penn Square
Philadelphia, PA 19107

Jacquelyn Fiorello, Esq.
Law Clerk to the
Honorable Ann M. Butchart