J-S37035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAKIRA WILLIAMS | : | |
| | : | |
| Appellant | : | No. 3336 EDA 2016 |

Appeal from the Judgment of Sentence June 17, 2016
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005172-2015,
CP-09-CR-0006359-2015

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 06, 2018**

Appellant Shakira Williams appeals from the judgment of sentence of five (5) years to twenty (20) years in prison with a concurrent term of ten (10) years' probation entered in the Court of Common Pleas of Bucks County on June 17, 2016, following a jury trial.   We affirm.

The trial court detailed the facts and procedural history herein as follows:

**Procedural and Factual History**

**Criminal Information Number 5172-2015**

> On February 18, 2016, following a trial by jury, [Appellant] was convicted of robbery (inflicts bodily injury, threatens another with or intentionally puts another in fear of immediate bodily injury), 18 Pa.C.S. §3701(a)(1)(iv), a felony of the second degree; conspiracy to commit robbery, 18 Pa.C.S. §903, a felony of the second degree; robbery (physically takes/removes property from a person by force however slight), 18 Pa.C.S.

_____
*   Former Justice specially assigned to the Superior Court.

§3701(a)(1)(v), a felony of the third degree; conspiracy to commit robbery, a felony of the third degree; theft by unlawful taking, 18 Pa.C.S. §3921(a), a felony of the third degree (value of property taken exceeded $2,000); simple assault, 18 Pa.C.S. §2701(a)(1), a misdemeanor of the second degree; identity theft, 18 Pa.C.S. §4120(a), a felony of the second degree (value of property obtained $2,000 or more, victim sixty years of age or older at time of offense); access device fraud, 18 Pa.C.S. §4106(a)(1)(ii), (Lowe's- value of property obtained exceeded $500), a felony of the third degree; access device fraud (Home Depot - value of property obtained exceeded $500), a felony of the third degree; and access device fraud (Kohl's - value of property obtained between $50 and $500), a misdemeanor of the first degree. [Appellant] was found not guilty of aggravated assault (attempting to cause or causing bodily injury with a deadly weapon), a felony of the second degree.

The victim, Mildred Abrams (Ms. Abrams), was seventy-eight years old at the time of trial. On May 25, 2015, at about 10 a.m., Ms. Abrams drove to the ShopRite grocery store located in Fairless Hills, Bucks County, to purchase rolls for a Memorial Day picnic. N.T. 2/16/16, pp. 51-52. After Ms. Abrams entered the store, [Appellant] and her Co-Defendant, Michael Galante (Galante), arrived at the shopping center and parked their car four or five spaces away from Ms. Abrams' car. N.T. 2/16/16, p. 63; N.T. 2/17/16, p. 94. [Appellant] and Galante entered the ShopRite, observed [Ms.] Abrams and followed her out of the store. Surveillance cameras captured [Appellant] and Galante entering the store and, after a short period of time, leaving the store behind Ms. Abrams. N.T. 2/16/16, pp. 82-87; Exs. C-1(a)-(d).

After leaving the store, [Appellant] returned to the car she and Galante were driving. Galante continued to follow Ms. Abrams. N.T. 2/17/16, pp. 106-107. When Ms. Abrams stopped at her car, Galante forcibly removed Ms. Abrams['] purse from her person and ran back to his car. Ms. Abrams followed, shouting that her pocketbook had been taken. N.T. 2/16/16, pp. 59, 63, 90-92; N.T. 2/17/16, pp. 19-21; 107-108. After Galante got into the driver's seat of his car, Ms. Abrams reached inside the open[] window on the driver's side in an attempt to retrieve her purse. N.T. 2/16/16, pp. 64, 92; N.T. 2/17/16, pp. 20, 109-110. [Appellant], seated in the passenger seat, shouted at Galante to "go, go." Galante drove away at a high rate of speed. Ms. Abrams, who was still partially inside the vehicle, fell and struck her face on the pavement. N.T.

2/16/16, pp. 65-67, 93-94; N.T. 2/17/16, pp. 20-22; 110-111; Ex. C-2.

Ms. Abrams was later transported by ambulance from the scene to a local hospital where she received eleven stitches to close a gash over her eye. Ms. Abrams also sustained bruises and scrapes on the right side of her body. N.T. 2/16/16, pp. 69-70.

After [Appellant] and Galante fled the scene, they proceeded to New Jersey. Along the way, cash and credit cards were removed from Ms. Abrams' purse; the purse and remaining items were discarded. N.T. 2/17/16, pp. 111, 119. [Appellant] and Galante used the cash to buy heroin. They then proceeded to use the credit cards to make purchases from Home Depot, Lowe's and Kohl's, in order to obtain money for more heroin. N.T. 2/17/16, pp. 111-117. Receipts of those transactions established that [Appellant] used [Ms.] Abrams' credit cards to purchase $965.79 in merchandise and gift cards from Home Depot, $807.96 in merchandise and gift cards from Lowe's and $252.85 in merchandise from Kohl's, and signed [Ms.] Abrams' name without her permission. N.T. 2/16/16, pp. 62, 73-83; Ex. C-3 (Home Depot receipt); Ex. C-4 (Home Depot receipt); Ex. C-5 (Lowe's receipts); Ex. C-6 (Lowe's receipt); Ex. C-7 (Kohl's receipt). Surveillance cameras captured [Appellant] selecting items and making purchases at Lowe's and Home Depot. N.T. 2/17/16, pp. 43-52; 58-71; Ex. C-8 (Home Depot video); Exs. C-12-C-15 (Lowe's video).

Galante testified against [Appellant] at trial and corroborated the above set of facts. In addition, Galante testified that on May 25, 2015, he and [Appellant] agreed to go to the ShopRite in Fairless Hills to steal a wallet from one of the shoppers. N.T. 2/17/16, p. 93. Galante further testified that he and [Appellant] agreed to commit the crime because they both needed money to purchase crack and heroin. N.T. 2/17/16, pp. 98-99. Initially, the plan was that [Appellant] would draw the victim's attention away from her purse and Galante would steal the wallet from the purse without the victim's knowledge. N.T. 2/17/16, pp. 93-94. However, when they arrived inside of the ShopRite and began to look for a victim, Galante began to feel "dope sick," i.e. experience heroin withdrawal symptoms, and decided to steal an entire purse. N.T. 2/17/16, pp. 98-101. Galante changed plans after seeing Mrs. Abrams with her purse inside the top basket of her shopping cart, and determined it would be easier for him to snatch the purse from the cart. N.T. 2/17/16, pp. 99-101. When Galante and [Appellant] followed Mrs.

Abrams out of the store. Galante told [Appellant] that he was going to get the purse and told [Appellant] to go to the stolen car. [Appellant] responded, "okay" and returned to the car as directed. N.T. 2/17/16, pp. 99-100, 130, 153. Galante testified that while driving to New Jersey after the robbery, he and [Appellant] discussed using the credit cards from the purse to purchase power tools from Home Depot and Lowe's to "fence," i.e. sell them at a pawn shop for cash. N.T. 2/17/16, pp. 111-112.

Surveillance videos were retrieved from ShopRite, Home Depot and Lowe's. The same individual used the victim's credit cards at all three locations. That individual had a distinctive tattoo on her right arm identical to a tattoo on [Appellant's] right arm. N.T. 2/17/16, pp. 164-173; Ex. C-16. Galante also identified [Appellant] in the store surveillance videos. N.T. 2/17/16, pp. 113-116.

On July 7, 2015, after being advised her <u>Miranda</u>[1] rights and waiving those rights, [Appellant] admitted that she and Galante had planned to go to the ShopRite in Fairless Hills to "rob" somebody's purse and use the credit cards found within to purchase tools and gift cards. N.T. 2/17/16, pp. 178-179. [Appellant] admitted to Detective Slemmer that she and Galante committed subsequent robberies, in which they targeted women with purses, in order to support their drug habits. N.T. 2/17/16, pp. 186-188.

## Criminal Information Number 6359-2015

On May 27, 2016, [Appellant] pled guilty to use/possession of drug paraphernalia, 35 Pa.C.S. §780-113(a)(32), a misdemeanor.[2] [Appellant] admitted to the following facts regarding this offense:

> On June 23, 2015, during a high-speed police pursuit, the officers found [Appellant] on Route 1 south in the area of Old Lincoln Highway in Bensalem, Bucks County. She was found to be in possession of, among other things, pipes, bags, vials, and needles positive for the presence of a controlled substance.

N.T. 5/27/16, pp. 6-7.

## Sentencing

On May 27, 2016, [Appellant] was sentenced on both cases. On Criminal Information 5172-2015, [Appellant] was sentenced

to an aggregate sentence of seven-and-one half to twenty years. A term of incarceration of five to ten years was imposed on the Robbery conviction (inflicts bodily injury, threatens another with or intentionally puts another in fear of immediate bodily injury). A consecutive term of incarceration of two-and-one half to ten years was imposed on the Identity Theft conviction. A concurrent term of incarceration of two-and-one half years to five years was imposed on the Conspiracy to commit Robbery conviction. [Appellant] was also ordered to pay $349 in restitution to Ms. Abrams. N.T. 5/27/16, pp. 59-63. On Criminal Information 6359-2015, [Appellant] was placed on probation for a period of one year for Possession of Drug Paraphernalia. That sentence was imposed to run concurrent to the sentence imposed on Criminal Information 5172-2015.

By order dated June 3, 2016, this [c]ourt *sua sponte* vacated [Appellant's] sentence and directed a hearing be held on June 17, 2016 for the [c]ourt to hear further testimony regarding the sentencing of Co-Defendant, Michael Galante. N.T. 6/17/16, pp. 2-3, 20. Based on the evidence presented at that hearing, the aggregate term of incarceration imposed on Criminal Information 5172-2015 was reduced to five to twenty years based on the sentence imposed upon Galante, clearly the more culpable actor in the robbery of Ms. Abrams. [Appellant] was sentenced to a term of incarceration of two-and-one half to ten years on her conviction for Robbery (inflicts bodily injury, threatens another with or intentionally puts another in fear of immediate bodily injury) with a consecutive term of incarceration of two-and-one half to ten years on the Identity Theft conviction. A concurrent period of ten years['] probation was imposed on [Appellant's] conviction for Conspiracy to commit Robbery. No further penalty was imposed on the remaining counts. [Appellant] was also ordered to pay restitution to [Ms.] Abrams. On Criminal Information 6359-2015, [Appellant] was sentenced to six to twelve months for Possession of Drug Paraphernalia, to be served concurrent to the sentence imposed on Criminal Information 5172-2015.

## **Appeals from the Judgments of Sentence**

On July 18, 2016, [Appellant] filed *pro se* Notice of Appeal from the judgment of sentence. On October 24, 2016, [Appellant] filed a *pro se* PCRA Petition. By order dated November 9, 2016, this [c]ourt denied PCRA relief pursuant to 42 Pa.C.S. §9541, *et seq*, and Commonwealth v. Leslie, 757 A.2d 985 (Pa.Super.2000) (Trial Court lacks jurisdiction to proceed on PCRA petition during

pendency of direct appeal). By order dated that same date, [Appellant] was directed to file a Concise Statement of Matters Complained ("Statement") of on Appeal within twenty-one days pursuant to Pa.R.A.P. 1925(b).

[Appellant] did not comply with this [c]ourt's order directing her to file a Statement within twenty-one days and did not order the necessary transcripts as required by Pa.R.A.P. 1911(a). Accordingly this [c]ourt was unable to file an opinion on the merits of [Appellant's] appeal and on January 27, 2017, filed an opinion finding that [Appellant] waived her right to raise any issues on direct appeal. See, Trial Court Opinion, 1/27/17.

On February 16, 2017, the Superior Court remanded the matter to this [c]ourt for a determination as to whether counsel has abandoned [Appellant] and to take further action as required to protect [Appellant's] right to appeal, including, but not limited to, appointment of new counsel.

By order dated March 31, 2017, having been advised that Trial Counsel had not been retained by [Appellant] for purposes of appeal, this [c]ourt granted Trial Counsel's request to withdraw his appearance and appointed new counsel to represent [Appellant] for purposes of direct appeal. This [c]ourt further ordered transcription of the necessary notes of testimony and again ordered [Appellant] to file a Statement within twenty-one days. On June 9, 2017, [Appellant] filed a timely counseled Statement.

_____

[1]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2]The Commonwealth's motion to consolidate these cases for trial was denied on February 16, 2016. N.T. 2/ 16/ 16, pp. 6-7[.]

Trial Court Opinion, filed 9/11/17, at 1-6.

In her brief, Appellant presents the following Statement of the Question

Involved:

1.      Did the lower court err by ruling that [Appellant's] prior criminal record was admissible when overwhelming evidence of her guilt was presented at trial?

2.      Did the [c]ourt lack jurisdiction to try crimes that occurred in New Jersey with the use of items stolen in Pennsylvania?

- 6 -

3.     Was the Appellant's sentence too harsh given her attempts at rehabilitation?

Brief for Appellant at 4.  We shall discuss each of these issues in turn, and in first analyzing Appellant's challenge to the admission of evidence, we employ a well-settled standard of review:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Ivy*, 146 A.3d 241, 250–51 (Pa.Super. 2016) (citation omitted).

It is impermissible to present evidence at trial of a defendant's prior bad acts or crimes in an attempt to establish the defendant's criminal character or propensity to commit crimes. *See Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa.Super. 2008), *appeal denied*, 600 Pa. 739, 964 A.2d 1 (2009); Pa.R.E. 404(b)(1). Such evidence, however, may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa.Super. 2007) (citation omitted), *appeal denied*, 598 Pa. 766, 956 A.2d 434 (2008). Evidence of other crimes, wrongs or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or lack of accident and is

admissible in a criminal case only where the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).

In the matter *sub judice*, Appellant acknowledges that evidence she and her co-defendant committed other robberies "might have been admissible"; however, she reasons that "ascribing to them evidence that [she] was also committing other robberies and illegally purchasing and using drugs- crimes not charged in this matter- was improper." Appellant admits "research has not discovered any case on point with this issue where such evidence was ruled inadmissible under circumstances such as those in this record," but submits admission of evidence concerning Appellant's drug dependency was "manifestly unreasonable" herein, especially in light of the "overwhelming" evidence of Appellant's guilt, including testimony of her co-conspirator, Mr. Galante, that had been presented prior to the time Detective Slemmer testified. Appellant concludes the minimal probative value of the evidence resulted in its being unduly prejudicial to her. Brief for Appellant at 11-12.

The trial court held the testimony of Detective Douglas Slemmer concerning the actions of Appellant and Mr. Galante was admissible under Pa.R.E. 404(b)(2) to show the presence of the intent, preparation, plan and knowledge to establish a conspiracy. The court further found the evidence admissible to rebut Appellant's defense presented at trial that she was merely present when the crimes were committed. In doing so, the trial court reasoned as follows:

[Appellant] asserts that this [c]ourt erred in admitting [Appellant's] statement that she and Michael Galant[e] planned and engaged in other crimes. Statement, ¶ 3. In her statement, [Appellant] admitted that she and Galant[e] were involved in an ongoing criminal conspiracy at the time the robbery of Ms. Abrams occurred. She described the scope of that conspiratorial agreement as follows: the Defendant and Galante agreed to target older women at grocery stores to "rob" them of their purses, use the credit cards to obtain additional property that would then be converted into cash which would then be used by the two conspirators to purchase drugs for their joint use. [Appellant] admitted that, pursuant to that plan, she and Galante committed multiple robberies. She admitted that the crimes committed against Ms. Abrams were part of that ongoing criminal conspiracy between her and Galante. N.T. 2/16/16, pp. 13-19.

Pennsylvania Rule of Evidence 404 generally prohibits the admission of evidence of a crime, wrong or other act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Pa.R.E. 404(b)(1). However, such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2). This list of exceptions is not exclusive. Commonwealth v. Hicks, 156 A.3d 1114, 1125 (Pa. 2017); Commonwealth v. Brown, 52 A.3d 320, 325 (Pa. Super. 2012), appeal denied, 62 A.3d 377 (Pa. 2013). "[C]ourts are not restricted to the nine exceptions expressly listed in Rule 404(b)(2) when exercising their discretion to permit the admission of evidence of prior crimes, wrongs and acts, so long as the evidence is used for purposes other than to prove character or a propensity to act in accordance with traits of character." Commonwealth v. Johnson, 160 A.3d 127, 144 (Pa. 2017).

In the instant case, [Appellant] was charged with robbery and conspiracy to commit robbery. Both individuals involved fled the scene and were not immediately apprehended. This [c]ourt ruled that the evidence that [Appellant] admitted to have participated in other purse snatch robberies with Galante was admissible to prove identity.

Evidence of other criminal conduct is admissible to prove identity where the relevant details and surrounding circumstances of each incident reveal criminal conduct which is sufficiently distinctive to establish a common plan, scheme or design. Commonwealth v. Tyson, 119 A.3d 353, 360 (Pa.Super.2015)

appeal denied, 633 Pa. 787, 128 A.3d 220 (2015). In the instant case, the robberies were committed pursuant to the same prearranged plan. The details were therefore more than distinctive, they were identical. The evidence was therefore relevant and admissible to prove identity. See Commonwealth v. Weakley, 972 A.2d 1182, (Pa.Super.2009), appeal denied, 986 A.2d 150, 604 Pa. 696 (Evidence of a subsequent robbery of a jeweler was admissible in homicide prosecution involving death of a pharmacy owner to show identity, in view of methods that placed same signature on crimes at issue; both crimes involved selecting as victim a small business owner who possessed a large stock of small, easily confiscated, and highly valuable goods that could be readily trafficked in an illicit market, engaging victim not at his place of work but at his residence, overtaking and binding victim with combination of duct tape over eyes and mouth and plastic flex ties around wrists, and gaining uncontested access to valuable goods and a store of cash). Where, as here, multiple robberies derive from one criminal conspiracy and are but parts of one planned criminal episode, then evidence of each robbery event will be admissible at trial of the other offense to establish a common scheme or plan. Commonwealth v. Saunders, 483 Pa. 29, 34, 394 A.2d 522, 525 (1978).

The evidence with regard to the general conspiracy and actions taken pursuant to that conspiracy was also admissible to show intent, preparation, plan and knowledge to establish conspiracy and to rebut the defense of mere presence. Pa.R.E. 404(b)(2). At the time that the robbery occurred, [Appellant] was in the passenger seat of Galante's car. Galante committed the actual robbery. In its prosecution of [Appellant], the Commonwealth relied on conspiracy and accomplice liability. The defense argued that she did not intend to commit any crime, that she did not participate in the planning of any crime, that she did not enter into any agreement with Galante to commit a crime, that she had no foreknowledge that Galante was going to commit a theft and/or robbery and that she did not aid Galante at any time before, during or after the crime.

[Appellant's] admission prior to trial that she was, in fact, engaged in an ongoing conspiracy with Galante to commit the exact type of crime involved here in the exact manner and that the two of them had carried out that plan on more than one occasion was therefore relevant and admissible to prove that on the day this crime was committed, [Appellant's] involvement involved more than "mere presence," that she accompanied

Galante to the ShopRite store for the explicit purpose of committing a crime, that she had the intent to assist her co-conspirator in carrying out the crime, that she entered the store to locate a potential victim, that she followed Ms. Abrams for the explicit purpose of robbing her and that she knew what Galante was going to do when he continued to follow Ms. Abrams. The evidence clearly rebuts [Appellant's] argument of being in the wrong place, at the wrong time, with the wrong person. N.T. 2/16/16, pp. 44-45; See Commonwealth v. Tyson, 119 A.3d 353, 359 (Pa.Super. 2015) appeal denied, 633 Pa. 787, 128 A.3d 220 (2015) (Evidence of a prior crime may be admitted to show a defendant's actions were not the result of a mistake or accident, "where the manner and circumstances of two crimes are remarkably similar.").

Finally, this [c]ourt found that the agreement as to how the unlawful proceeds of the robbery, identity theft and access device fraud were to be used, i.e. the purchase of heroin, was part of the conspiratorial agreement between [Appellant] and Galante and that [Appellant's] statements regarding the agreed disposition of those proceeds was therefore relevant and admissible to the conspiracy charges. This [c]ourt further found that the statement regarding why the two entered into and carried out their ongoing conspiracy was admissible under the motive exception to Rule 404(b)(1). N.T. 2/16/16, p. 25.

In admitting the evidence, this [c]ourt properly determined, as required, that the probative value of the evidence outweighed its potential for unfair prejudice. Pa.R.E. 404(b)(2). Because [Appellant] was not apprehended at the scene and did not directly participate in the robbery and theft, the evidence was necessary to establish her identity and her complicity in the crimes charged.

Trial Court Opinion, 9/11/17, at 9-13.

Upon a review of the record, we agree with the trial court that Detective Slemmer's testimony was admissible to rebut Appellant's defense at trial that Mr. Galante acted without her knowledge in robbing Ms. Abrams, and that she was merely present at the scene. *See* N.T. Trial, 2/16/16, at 44-48; N.T. Trial 2/18/16, at 26-31, 35-39. Moreover, the trial court provided the jury with a cautionary instruction explaining the purpose for which the evidence of

"crimes committed outside this particular crime involving the purse snatch of May of 2015" had been admitted and informing it such evidence could not be considered as proof of Appellant's bad character or propensity to commit crimes.  N.T. Trial, 2/18/16, at 79-81.[1]

As our Supreme Court has stated, ["i]t is well settled that the jury is presumed to follow the trial court's instructions, **Commonwealth v. Travaglia**, 611 Pa. 481, 28 A.3d 868, 882 (2011), and Appellant does not otherwise attempt to offer any evidence establishing that the jury failed to do so in the instant case." **Commonwealth v. Cash**, 635 Pa. 451, 484, 137 A.3d 1262, 1280 (2016), *cert. denied*, **Cash v. Pennsylvania**, 137 S. Ct. 1202, 197 L. Ed. 2d 249 (2017).  In light of the foregoing, Appellant cannot establish arguable merit for this claim.

---

[1] In relevant part, the trial court stated the following:

> You may not consider that evidence of drug use or involvement in other criminal activity for any other purpose, meaning you can't just say, well, that person was involved in criminal activity; therefore, that person is bad, a bad person, that person has bad character, or that person has criminal tendencies and so, therefore, she must be guilty.  You may not do that.
>     This evidence is being admitted for one purpose and one purpose alone, is whether or not there was motive, whether or not that—there was a conspiracy, and whether or not she knew what to anticipate was going to occur on the date in question.  You cannot just say, well, she did something bad in the past; so therefore, she must have done something bad here.

N.T. Trial, 2/18/16, at 81.

Appellant next contends the trial court did not have jurisdiction over the crimes of identity theft, access device fraud and forgery because those crimes were committed in New Jersey.[2] In addressing Appellant's challenge to the trial court's subject matter jurisdiction, we are mindful of the following:

> The standard of review for a question of subject matter jurisdiction is *de novo* and the scope of review is plenary. . . .
> [S]ubject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law. Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*.[3]

***Commonwealth v. Arcelay***, 2018 WL 2927748, at *3-4 (Pa.Super. June 12, 2018) (citations and quotation marks omitted).

> While each court of common pleas in this state possesses the same subject matter jurisdiction to decide cases arising under the

---

[2] We note that in her "Statement Pursuant to Pa.R.App.Pro. 1925(b)," Appellant referenced convictions under 18 Pa.C.S.A. §§ 4120 (identity theft) and 4106 (access device fraud). As such, she has waived any argument pertaining to a conviction under 18 Pa.C.S.A. § 4101 (forgery). Rule 1925(b)(4)(vii) provides that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(vii). In ***Commonwealth v. Lord***, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998), our Supreme Court established the bright-line rule that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived."

[3] It is noteworthy that during his closing argument, defense counsel told the jury Appellant was guilty of identity theft and access device fraud and went so far ask to ask it to find her guilty of those crimes. N.T. Trial, 2/18/16, at 35. However, as this issue may be raised at any juncture of the proceedings, we will consider the merits of this claim.

Crimes Code, that jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances.

> The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.] For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient.

***Commonwealth v. Seiders***, 11 A.3d 495, 497 (Pa.Super. 2010) (citations and quotation marks omitted).

Section 102 of the Crimes Code, entitled "Territorial applicability" states, in relevant part: "Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct ... if ... (1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]" 18 Pa.C.S.A. § 102(a)(1). To establish the crime of identity theft of another person, pursuant to 18 Pa.C.S.A. § 4120(a), the Commonwealth must prove one "possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose." 18 Pa.C.S.A. § 4120(a). To sustain a conviction of access device fraud under 18 Pa. C.S.A. § 4106(a)(1)(ii), the Commonwealth must establish that one "(1) uses an access device to obtain or in an attempt to obtain property or services with knowledge that [ ] (ii) the access device was issued

to another person who had not authorized its use[.]" 18 Pa. C.S.A. § 4106(a)(1)(ii).

Herein, Appellant acknowledges "the Commonwealth presented evidence that [ ] Appellant used the credit cards found in Ms. Abrams' purse to purchase merchandise in New Jersey." Brief for Appellant at 12-13 (citations to record omitted). Notwithstanding, Appellant reasons the aforementioned crimes could not have been prosecuted in Pennsylvania because no evidence was presented that her conduct violated New Jersey law.

However, Appellant's theory ignores the fact that the felonious conduct under the Pennsylvania Crimes Code was initiated in Pennsylvania where the victim resided, and whether or not it contravened New Jersey Law is inapposite. In Bucks County, Appellant and Mr. Galante took possession of Ms. Abrams' purse without her consent and utilized the cash and credit cards contained therein to make various purchases in New Jersey.

Specifically, they used Ms. Abrams' cash to buy heroin and charged items from Home Depot, Lowe's and Kohl's on Ms. Abrams' credit cards. Hence, jurisdiction in this case properly lies in the Pennsylvania trial court because an element of each statute occurred here, *i.e.* Appellant used identifying information (credit cards) issued to Ms. Abrams, a Pennsylvania resident, to make purchases without her authorization in New Jersey. 18 Pa.C.S.A. § 102.

Appellant's final claim pertains to the discretionary aspects of his sentence. *See Commonwealth v. Krum*, 533 A.2d 134, 135 (Pa.Super. 1987) (*en banc*) (challenges to the trial court's application of the sentencing guidelines address the discretionary aspects of Appellant's sentence). Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b). *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006).

*Id*.

Herein, Appellant waived her claim the trial court issued a sentence in the aggravated range of the Sentencing Guidelines without providing adequate reasons for doing so. As stated above, the trial court initially sentenced Appellant on May 27, 2016, to an aggregate term of seven and one-half years to fifteen years in prison with a one-year sentence of probation to be served concurrently thereto. Prior to Appellant's filing of a motion for reconsideration of that sentence on June 6, 2016, the trial court *sua sponte*

entered an order on June 3, 2016, vacating Appellant's sentence and directing that a new sentencing hearing be held. That hearing was held on June 17, 2016, following which the trial court imposed a new aggregate sentence within the Sentencing Guidelines range of five years to twenty years in prison with a concurrent term of ten years' probation, and it is this sentence from which the instant appeal was taken.

A review of the certified record reveals Appellant failed to raise the challenge to her sentence that she presents herein with the trial court either at her June 17, 2016, sentencing hearing or in a motion for reconsideration following the imposition of the sentence. In fact, Appellant indicates in her Response to Rule to Show Cause Why Appeal Should Not Be Quashed As Interlocutory filed with this Court on January 17, 2017, that following June 17, 2016, "[n]o other post-verdict motions were filed or are pending." **See id**. at ¶2. Thus, Appellant has failed to preserve a challenge to the discretionary aspects of her sentence. **See Allen**, supra.[4]

Judgment of Sentence affirmed.

---

[4] The trial court found this issue lacked merit. "To the extent our legal reasoning differs from the trial court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record." **Commonwealth v. Rouse**, 2018 WL 2750554, at *5 (Pa.Super. June 8, 2018) (citation omitted).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *7/6/2018*