**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT CLARK | : | |
| | : | |
| Appellant | : | No. 1736 EDA 2019 |

Appeal from the Order Entered March 18, 2019
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0006549-2017

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    Filed: July 30, 2020

Appellant, Vincent Clark, appeals from his judgment of sentence entered by the Court of Common Pleas of Delaware County for, *inter alia*, first-degree murder. In the sole issue in his appeal, Appellant argues that the trial court abused its discretion in denying the motion for a mistrial he made after a Commonwealth witness testified that he believed Appellant had previously killed someone other than the victim in this case. Appellant alleges the prosecutor intentionally elicited this testimony without giving prior notice to him and this amounted to prosecutorial misconduct. We disagree that the trial court abused its discretion in denying Appellant's motion for a mistrial, and therefore affirm Appellant's judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

On May 31, 2015, Michael Collier, who was also called by the nickname "Sheetz," was shot sixteen times and killed outside of his sister's house in Chester. Appellant was subsequently charged with the murder, but his first trial ended in a mistrial due to a hung jury. A second trial began on January 7, 2019.

Breon Purnell, a long-time friend of Appellant's, testified at Appellant's first trial and again at Appellant's second trial. Purnell testified that on the night of Sheetz's murder, he saw a post on Facebook written by Sheetz's sister that Appellant had killed Sheetz.

Later that same evening, Appellant called Purnell and picked him up at his house. Purnell testified that the two drove around selling cocaine, and as they did so, Appellant admitted to killing Sheetz. According to Purnell, Appellant maintained he killed Sheetz because Sheetz had killed Eshon Mills, a mutual friend to Purnell and Appellant. Mills had been killed approximately two weeks before Sheetz.

Purnell did not come forward with this information to authorities until March of 2017. At trial, the prosecutor questioned Purnell about his delay in coming forward, asking him "Why then? Why did you talk to police then?" N.T. Trial, 1/8/19, at 110. Purnell replied that it was because he "found out that [Appellant] had killed [Mills]." *Id*. Defense counsel objected. The court sustained the objection, stating that counsel would "have to elicit a foundation before the jury can [ ] put any credence in that remark." *Id*. at 111.

- 2 -

Defense counsel requested a sidebar and moved for a mistrial on the basis that the Commonwealth had not given notice of its intent to present evidence of prior criminal activity. The trial court denied the motion. Purnell's direct testimony continued, wherein he stated that when he spoke with police in March of 2017 he was incarcerated on an open theft by receiving stolen property charge but that he had not received any favorable treatment regarding the resolution of that charge in exchange for his statement against Appellant. *See id*. at 112.

The next morning, the trial resumed and the trial court gave the following curative instruction to the jury:

> Yesterday you may have heard that Mr. Breon Purnell testified that [Appellant] murdered a gentleman he identified as [Mills]. He also stated that he and [Appellant] had been selling cocaine together at some point in time. You may also recall that the District Attorney in her opening statement said that there had been a rumor that [Sheetz] had been killed because he had killed a drug dealer. That his death was an act of revenge for the killing of that drug dealer. Understand and this is critically important [:] [Appellant] is not charged with the killing of anyone other than [Sheetz] and has never been charged with the killing of anybody other than [Sheetz]. [Appellant] is also not and I emphasize the word not, charged with selling cocaine. Additionally, there is absolutely no evidence that the victim in this case, [Sheetz], is responsible for killing anyone else. You may not and must not consider that [Appellant] or the victim in this case [Sheetz] were guilty of any other crime. Were you to do so you would be making a mockery of our system of justice because your verdict would not be based upon evidence, but upon speculation without any evidentiary support. Is there anyone on this jury who has any doubt that they can and will and must follow this instruction? Anyone? Okay, let's proceed.

N.T. Trial, 1/9/19, at 3-4.

- 3 -

Several other witnesses testified over the next three days, including Detective Thomas Scarpato, one of the investigating detectives in the Sheetz murder case. Detective Scarpato's department had also been involved with the Mills murder case. The Commonwealth asked Detective Scarpato if the police had ever been able to develop any suspects in the murder of Mills, and the detective replied that they had not. *See id*. at 72. Following the trial, the jury convicted Appellant of, *inter alia*, first-degree murder. The trial court subsequently sentenced him to life in prison without parole plus 8 1/2 to 17 years of incarceration.

Appellant filed a post-sentence motion, claiming, *inter alia*, that the court abused its discretion in failing to grant a mistrial based on the prosecutor's alleged misconduct in intentionally eliciting the testimony from Purnell that he suspected Appellant had killed Mills. However, because the prosecutor in Appellant's case was unavailable to testify at the post-sentence motion hearing, she provided responses to written interrogatories submitted by Appellant. Following the hearing and the submission of the written interrogatories and responses,[1] the trial court denied Appellant's post-

---

[1] Appellant has included these interrogatories and the responses to those interrogatories in the reproduced record and the trial court refers to them as "Defendant's Interrogatories and the Commonwealth's Responses Thereto Submitted as Exhibit B." **See** Trial Court Opinion, 8/6/19, at 14. The interrogatories and responses do not, however, appear to be part of the certified record. However, there is an entry in the docket on May 31, 2019 for these documents, and there is no challenge as to the content of either the interrogatories or the responses.

sentence motion. Appellant filed a timely notice of appeal. Appellant complied with the trial court's instruction to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and the trial court issued its Pa.R.A.P. 1925(a) opinion in response to that statement.

In this appeal, Appellant continues to maintain that the trial court erred by not granting his motion for a mistrial on the basis of Purnell's testimony that he suspected Appellant killed Mills. He argues, in the first instance, that a mistrial was warranted because the prosecutor intentionally elicited this prejudicial testimony and this amounted to intentional prosecutorial misconduct. This claim fails.

The granting of a mistrial is a matter vested in the sound discretion of the trial court. *See Commonwealth v. Jones*, 668 A.2d 491, 503 (Pa. 1994). It is an extreme remedy that is only required when the trial court determines, in its discretion, that an alleged prejudicial event is "of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Commonwealth v. Hogentogler,* 53 A.3d 866, 878 (Pa. Super. 2012) (citation omitted). In making its determination, the trial court "must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice." *Id*. This Court's review of the trial court's ruling on a motion for a mistrial is limited to determining whether the trial court abused its discretion. *See id*.

Prosecutorial misconduct is not grounds for a mistrial unless the unavoidable effect of the prosecutor's actions was to prejudice the jurors, forming in their minds a fixed bias and hostility toward a defendant so that they were incapable of weighing the evidence objectively and rendering a true verdict. *See Commonwealth v. LaCava,* 666 A.2d 221, 231 (Pa. 1995). A claim of prosecutorial misconduct must be viewed in light of the entire context in which the alleged misconduct arose. *See id*. at 235.

Here, Appellant alleges that Purnell's challenged "testimony had to have been intentionally elicited by the Commonwealth," and asks "Why else would the Commonwealth ask the question that resulted in Purnell's improper testimony?" Appellant's Brief at 10-11. In addressing this claim and this question below, the trial court stated:

> The assistant district attorney who represented the Commonwealth at both trials provided written interrogatories in lieu of testifying at [Appellant's] post-sentence motion hearing. In response to [Appellant's] inquiry concerning her discussions with [ ] Purnell in preparation for his testimony for the second trial the prosecutor stated that she reviewed, *inter alia*, [ ] Purnell's testimony on cross-examin[ation] from the first trial and that they discussed a series of questions where defense counsel confronted [Purnell] 'about whether [Purnell] believed that Sheetz killed Eshon Mills.' [ ] Purnell told the prosecutor that initially he believed [Appellant's] explanation that Sheetz shot [Mills]. Eventually he came to believe that [Appellant] shot and killed [Mills]. [ ] Purnell had no factual basis for his belief 'other than an apparent change in [Appellant's] behavior following [Mill]'s death.' In light of this the prosecutor instructed [ ] Purnell that he was not to testify as to his suspicion at trial. The prosecutor stated that her expectation was, that in response to her question regarding his delay in coming forward, [ ] Purnell would discuss the charges against him that were open at the time he gave the statement and the circumstances of his plea since these matters were used to attack

Purnell's credibility during the first trial. At trial she attempted to elicit this testimony on direct examination anticipating, after the first trial, that the defense strategy would focus on [ ] Purnell's open cases and suggest that he had received consideration on those cases. …

The prosecutor did not intentionally elicit [Purnell's objectionable] testimony. She prepared [ ] Purnell for the second trial and instructed him directly and unequivocally that he was not to testify that he suspected that [Appellant] killed [Mills]. The prosecutor's intent to address the vulnerabilities in … Purnell's … credibility in an anticipatory fashion is evidenced by the fact that the prosecutor[ ] who represented the Commonwealth in [the] criminal case that [was] open at the time [ ] Purnell [ ] came forward [was] called to explain the outcome of [the] criminal proceeding [and that when she negotiated Purnell's plea in that proceeding she was unaware that Purnell was a witness in the instant case]. [She was] not called during the first trial. In cross-examination at [the first trial], [defense] counsel suggested that because [ ] Purnell gave his statement in March 2017 when he was incarcerated the statement was a way for Purnell to obtain a quick release [from jail]. … In [his] opening argument at the second trial[,] defense counsel again argued, and at greater length, that [ ] Purnell offered his statement in exchange for a release from jail. The strategy employed by [defense] counsel lends credence to the prosecutor's explanation that she posed the question concerning Purnell's delay in coming forward after preparing him for cross-examination regarding his motive for offering evidence and after explicitly instructing him not to express his belief that [Appellant] killed [Mills].

Trial Court Opinion, 8/6/19, at 13-15 (citations omitted) (footnotes omitted).

The trial court's findings are supported by the record and we see no error in its conclusion that based on that record, the prosecutor did not intentionally elicit Purnell's testimony that he came forward because he believed Appellant killed Mills. Instead, as the trial court found, the prosecutor specifically instructed Purnell *not* to give any testimony about those suspicions and there is no evidence that her question was intended to contradict her own

instructions and prompt Purnell to do so. **See Commonwealth v. Graham**, 109 A.3d 733, 737-738 (Pa. Super. 2015) (finding that no prosecutorial misconduct took place when the prosecutor's question, which did not directly or indirectly ask about any unrelated criminal activity but which "could have been worded … more carefully," did not prompt Commonwealth witness's testimony that the defendant had sexually molested another person in addition to the victim for whom he was on trial for sexually molesting).[2]

Appellant argues, however, that even if the prosecutor did not intend to elicit Purnell's objectionable testimony, a mistrial was still warranted because the testimony constituted improper and unduly prejudicial evidence of prior criminal activity and the curative instruction issued by the trial court did not cure the prejudice stemming from that testimony. This claim also fails.

Evidence of prior crimes may not be presented at trial to establish the defendant's criminal character or proclivities. **See Commonwealth v.**

_____

[2] Appellant also tacks on a one-sentence assertion that the prosecutor at least recklessly elicited Purnell's objectionable testimony and that a mistrial should have been granted on this basis. In the first place, Appellant does not cite to any case law in support of this claim nor does he develop it in any meaningful way. The claim is therefore waived. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments which are not sufficiently developed are waived). Even if Appellant had not waived this claim, we fail to see how the prosecutor acted recklessly when the trial court specifically found that she "directly and unequivocally" instructed Purnell to avoid the testimony at issue and that her question was not meant to prompt that testimony. Trial Court Opinion, 8/6/19, at 14.

***Hudson***, 955 A.2d 1031, 1034 (Pa. Super. 2008). However, if evidence of prior criminal activity is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction to the jury that it is to disregard the evidence. ***See id***. Our Supreme Court has clearly stated that a mistrial is not necessary if the trial court gives an adequate cautionary instruction. ***See Commonwealth v. Bryant***, 67 A.3d 716, 728 (Pa. 2013). Moreover, the law presumes that the jury will follow a trial court's curative instruction. ***See Jones***, 68 A.2d at 504.

Here, in addressing the prejudicial effect of Purnell's objectionable testimony, the trial court noted that the testimony was only a brief reference and that the prosecutor had not subsequently referenced the testimony or exploited it in any way.[3] In fact, as the Commonwealth points out, the prosecutor later undermined Purnell's testimony regarding his suspicions that Appellant killed Mills when she elicited testimony from Detective Scarpato that there had never been any suspects in the Mills' murder case. The trial court then noted that it gave a strongly worded cautionary instruction to the jury

---

[3] Appellant argues that the trial court's characterization of the reference as brief is inaccurate because Purnell referred to Appellant killing Mills and then did so again in response to the defense counsel's statement that he could not hear what Purnell said. ***See*** N.T., 1/8/19, at 110. It is true that there were issues regarding noise in the courtroom and the difficulty in hearing Purnell throughout his testimony. ***See id***. at 98, 104, 123, 126 and 134. However, as the Commonwealth argues, the fact that the courtroom was noisy during Purnell's references, if anything, only served to lessen the risk of prejudice. Moreover, Appellant does not contend that Purnell repeated this testimony at any time after this exchange.

that it was not to consider Purnell's testimony that he believed Appellant killed Mills, and determined that this instruction cured any residual prejudice resulting from that testimony.

We see no error in the trial court's determination. In its instruction, the court made clear to the jury that it was to disregard Purnell's testimony that Appellant had killed Mills and that Appellant had never been charged with the killing of anybody other than Sheetz, the victim in that case. The court instructed the jury in no uncertain terms that it must not consider that Appellant was guilty of any other crime. The trial court specifically asked if there was any member of the jury who had any doubt that he could and must follow the court's instruction in this regard and not one juror responded. The jury gave no indication that it did not follow this instruction, and the law is clear that it is presumed that the jury did so. **See Jones**, 68 A.2d at 504.

Appellant complains, however, that this instruction was insufficient to cure the prejudice caused by Purnell's testimony because the court did not issue the instruction until the morning after Purnell testified. We disagree.

As the trial court noted, when Purnell offered his unsolicited testimony that he believed Appellant killed Mills, defense counsel objected. The trial court sustained counsel's objection, and cautioned the jury that it could not put any credence into the objected-to testimony. After Purnell finished testifying, the trial court called counsel for a sidebar, where defense counsel and the prosecutor informed the court that they were uncertain as to exactly what

Purnell had said in terms of the challenged testimony due to the noise in the courtroom. **See** N.T. Trial, 1/8/19, at 133-134. Both counsel agreed to review the tape of Purnell's testimony at issue after the testimony of the next witness, who was the final one of the day. **See id**. at 133-135. After that witness testified, and after the jury was dismissed for the day, the tape of Purnell's testimony was replayed for counsel. **See id**. at 152-153. Defense counsel then renewed his motion for a mistrial, and in response, the court asked defense counsel for a proposed curative instruction to address the objectionable testimony. **See id**. at 154-156.

First thing the following morning, before any testimony resumed, the court gave the jury the instruction quoted above, unequivocally telling the jury that it was not to consider Purnell's testimony regarding any unrelated crimes he believed Appellant had committed. Under these circumstances, we see no abuse of discretion in the trial court's determination that its instruction, which the jury is presumed to have followed, cured any prejudice resulting from Purnell's unsolicited testimony and that a mistrial was not required. **See Commonwealth v. Dennis**, 715 A.2d 404, 410 (Pa. 1998) (finding that a cautionary instruction delivered the day after the admission of improper evidence regarding the defendant's motive was "presumed to be sufficient to cure any prejudice to" the defendant).

Appellant argues that **Commonwealth v. Roman**, 351 A.2d 214 (Pa. 1976), compels the contrary conclusion that the trial court did in fact abuse its discretion in not granting his motion for a mistrial. It does not.

**Roman** involved the Commonwealth's intentional introduction of prior instances of the defendant's criminal activity at the defendant's trial for second-degree murder. In **Roman**, the trial court ruled at trial that the Commonwealth was allowed to present testimony that the defendant shot his gun at a woman's feet, stole and killed a calf with a hammer and assaulted a fellow gang member because, according to the trial court, this evidence showed the defendant's propensity for violence. **See id**. at 220-221. On appeal, the Commonwealth argued that the evidence had been admissible to show the defendant's motive and to show that the defendant's previous violent behavior incited his fellow gang members to commit the murder at issue. **See id**. at 219. The Supreme Court disagreed, finding that the trial court had admitted the evidence for an improper purpose and that the evidence did not tend to establish the defendant's intent or motive to predispose the group to murder. **See id**. at 219-221.

**Roman** is, in the words of the Commonwealth, "not instructive in this matter at all," Commonwealth's Brief at 19, and simply does not alter our conclusion that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial in materially different circumstances from those in **Roman**. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/20