J-S52045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH JAMES NEWMAN, JR. | : | |
| | : | |
| Appellant | : | No. 264 MDA 2018 |

Appeal from the Judgment of Sentence October 16, 2017
in the Court of Common Pleas of Clinton County
Criminal Division at No(s):  CP-18-CR-0000635-2016

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:  **FILED: NOVEMBER 9, 2018**

Joseph James Newman, Jr. (Appellant) appeals from the judgment of sentence imposed following his convictions for one count of aggravated assault, attempt to cause serious bodily injury to another; one count of aggravated assault, attempt to cause bodily injury with a deadly weapon; one count of person not to possess a firearm; one count of firearm not to be carried without a license; two counts of simple assault; and one count of recklessly endangering another person.  We affirm.

The Commonwealth charged Appellant with the above-referenced crimes[1] following an incident in Mill Hall Borough, Pennsylvania on August

_____

[1] Appellant was also charged with attempted homicide and terroristic threats.  A mistrial was declared after the jury deadlocked on the attempted homicide charge.  The jury found Appellant not guilty of terroristic threats.

_____

*   Retired Senior Judge assigned to the Superior Court.

22, 2016. We begin with a summary of the facts established by the Commonwealth at the jury trial conducted on August 10-11, 2017.

On August 22, 2016, Tim Moore, the president of the Outsiders Motorcycle Club (the Club), a non-profit organization, encountered Appellant and Appellant's friend James Schmidtberg at a Sheetz convenience store around 8:30 p.m. N.T., 8/10/2017, at 230. Appellant is a former member of the Club with whom Moore had bad blood. *Id.* at 228, 232. According to Moore, Appellant appeared intoxicated and shouted at Moore in a threatening manner, telling Moore that Moore better get 12-15 people together because Appellant, his boss, and 12 other men were "going to end things tonight." *Id.* at 230.

Later that evening, Moore and several members of the Club, including Gary Lucas, gathered in Mill Hall Borough near the residence of Moore's daughter. *Id.* at 241, 300. Appellant resided close to this location. *Id.* at 239.

After they arrived, Moore and Lucas observed Appellant, Schmidtberg, and Mike Bingaman walking up Arch Street towards them. *Id.* at 244, 278, 280. Lucas walked towards the trio, intending to diffuse the situation, and ended up standing face to face with Appellant with about a foot and one-half

between them.[2]  *Id.* at 249-50, 280, 282.  Lucas smelled alcohol on Appellant.  N.T., 8/11/2017, at 5.

Appellant pulled out a black semi-automatic pistol[3] and Moore and Lucas heard Appellant pull the action.  N.T., 8/10/2017, at 246-47, 251, 283.  According to Lucas, Appellant pointed the gun at Lucas's forehead, and all Lucas could see was the black hole at the end of the barrel.  *Id.* at 283-84.  Appellant told Lucas "it's going to end tonight," and fired a shot in the air.  *Id.* at 248, 250, 284; N.T., 8/11/2017, at 28.

Lucas then struggled with Appellant over the gun.  N.T., 8/10/2017, at 249-50, 280.  Appellant regained control of the gun, pointed it back towards Lucas's head, and fired a second time.  *Id.* at 284; N.T., 8/11/2017, at 28-31.  Moore initially thought Appellant shot Lucas in the head because of where Appellant had the gun pointed prior to shooting, but Moore realized the shot went past Lucas's head.  N.T., 8/10/2017, at 250-51.  Lucas testified that he had turned to his right to avoid the shot and the shot sailed past his left ear.  *Id.* at 284-86.  He thought he was dead, but realized he

---

[2] Moore followed Lucas to meet Appellant, and estimated he also ended up about one to two feet away from Appellant.  N.T., 8/10/2017, at 251.  It is unclear from the record exactly where he was standing in relation to Lucas and Appellant.

[3] The police recovered a Taurus 93 black semi-automatic pistol at the scene; the Commonwealth proceeded on the theory this was the gun used by Appellant.

was not. ***Id.*** at 286. He was not injured but sustained ringing in his left ear that still persisted at the time of trial. ***Id.***

After Appellant fired the gun the second time, Lucas tussled with Appellant over the gun while Appellant shouted at Bingaman to shoot Lucas in the knee. ***Id.*** at 251, 287. Bingaman fired two shots from his gun into the ground near Lucas's feet. ***Id.*** at 252, 288; N.T., 8/11/2017, at 80. Meanwhile, Lucas threw Appellant's gun off to the side, where the police later recovered it. N.T, 8/10/2017, at 289.

Police responded to the scene, and took statements from Appellant, Lucas, and other witnesses.[4] The Commonwealth also admitted, and played for the jury, video footage from a security camera in the vicinity, which depicted, *inter alia*, Appellant, Bingaman, and Schmidtberg in the area during the time in question. N.T., 8/10/2017, at 190-93; N.T., 8/11/2017, at 16.

After receiving the foregoing testimony, the jury found Appellant guilty of the crimes discussed *supra*. On October 16, 2017, the trial court sentenced Appellant to an aggregate term of 14½ years to 29 years of imprisonment. Appellant filed a post-sentence motion challenging, *inter alia*,

---

[4] The written statements taken by police from Lucas and another Commonwealth witness, Doug Smith, were admitted at trial as a defense exhibit. ***See*** Defendant's Exhibit D-2, D-3.

the sufficiency and weight of the evidence,[5] which the trial court denied. This timely-filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925. On appeal, Appellant raises three issues. Appellant's Brief at 9.

We first address his argument that the evidence was insufficient to convict Appellant of aggravated assault by using the following standard.

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, [is] sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth[.] The evidence need not preclude every possibility of innocence….

---

[5] On October 19, 2017, three days after his judgment of sentence, Appellant, through his newly-appointed counsel, filed a motion for extension of time in which to file his post-sentence motion due to counsel's recent appointment and the unavailability of the trial and sentencing transcripts. The trial court granted this motion on October 20, 2017, permitting Appellant to file a post-sentence motion within 10 days of his receipt of the trial and sentencing transcripts. Trial Court Order, 10/20/2017, at 1. The trial court had jurisdiction to grant that request as the motion was filed prior to the deadline for filing a post-sentence motion. **See Commonwealth v. Moore**, 978 A.2d 988, 991 (Pa. Super. 2009) (holding that trial court had authority to grant motion for extension of time to file post-sentence motion filed eight days after Moore's judgment of sentence). Although the trial court did not use the words "*nunc pro tunc*," its order made clear that it was expressly granting Appellant the right to file a post-sentence motion in such a fashion. **See Commonwealth v. Batty**, 169 A.3d 70, 72 n.4 (Pa. Super. 2017) (holding that trial court did not err by permitting counsel to file a motion *nunc pro tunc* after counsel filed a motion requesting such relief due to counsel's recent appointment).

***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (internal citations and quotation marks omitted). Credibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part, or none of the evidence. ***Commonwealth v. Scott,*** 146 A.3d 775, 777 (Pa. Super. 2016).

Appellant argues that because Lucas did not suffer "serious bodily injury," the Commonwealth needed to prove that he specifically intended to injure Lucas. Appellant's Brief at 16-19. He claims the evidence introduced at trial established only that he fired past Lucas, not "at" him, particularly the testimony of Douglas Smith, a Commonwealth witness who testified that Appellant moved his gun in the opposite direction from Lucas on the second shot.[6] ***Id.*** at 18-19. Finally, Appellant argues that he could not have intended to injure Lucas because he was only one and one-half feet away from Lucas when the gun was fired and "it would have been impossible to miss him." ***Id.*** at 19.

In order to prove that Appellant committed aggravated assault pursuant to subsection 2702(a)(1) of the Crimes Code, the Commonwealth needed to provide that Appellant either "attempt[ed] to cause serious bodily

---

[6] Specifically, when asked if Appellant moved his gun away from Lucas before firing the second shot, Smith responded that "[Appellant] moved [the gun] and [Lucas] leaned at the same time. [Lucas] moved and the gun moved at the same time in the opposite direction." N.T., 8/11/2017, at 30. He then stated that both Appellant and Lucas moved as Appellant was pulling the trigger, and he could not say who moved first. ***Id.*** at 30-31.

injury to another" or "cause[d serious bodily injury] intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"[7],[8]  18 Pa.C.S. § 2702(a)(1).

_____

[7] The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301(a).  The Commonwealth established that Lucas suffered ringing in his ear that persisted at the time of trial, which was almost one year after the shooting.  N.T., 8/10/2017, at 286.  This arguably could constitute "protracted … impairment of the function of any bodily member[.]"  18 Pa.C.S. § 2301(a).  However, because no further testimony was developed regarding Lucas's impairment, we will focus our analysis on whether the Commonwealth proved beyond a reasonable doubt that Appellant attempted to cause serious bodily injury.

[8] Appellant also argues that the Commonwealth's evidence was insufficient to convict him under 18 Pa.C.S. § 2702(a)(4) ("A person is guilty of aggravated assault if he … attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.").  Appellant's Brief at 16-19.  In contrast to subsection 2702(a)(1), which requires the Commonwealth to prove that the defendant caused or attempted to cause "serious bodily injury," a person can be guilty of aggravated assault pursuant to subsection 2702(a)(4) if he causes or attempts to cause "bodily injury."  **Compare** 18 Pa.C.S. § 2702(a)(1) **with** 18 Pa.C.S. § 2702(a)(4).

However, Appellant has waived any challenge to the sufficiency of the evidence regarding his conviction under subsection 2702(a)(4) by failing to preserve the issue in his Pa.R.A.P. 1925(b) concise statement.  Appellant's concise statement addresses his aggravated assault conviction pursuant to subsection 2702(a)(1) only.  **See** Appellant's Concise Statement, 3/1/2018, at 1 (questioning "[w]hether the evidence was insufficient … to convict [Appellant] on the charge of [a]ggravated [a]ssault, specifically where the Commonwealth's evidence failed to establish beyond a reasonable doubt that it was [Appellant's] intent to cause **serious bodily injury** to [Lucas]") (emphasis added).

Failure to preserve an issue in the Rule 1925(b) concise statement results in waiver of the issue for appeal.  **See** Pa.R.A.P. 1925(b)(4)(ii), (iv)
*(Footnote Continued Next Page)*

"For aggravated assault purposes, an attempt is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa. Super. 2012) (citation and quotation marks omitted). "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result...." 18 Pa.C.S. § 302(b)(1)(i). "[I]ntent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." ***Martuscelli***, 54 A.3d at 948. When determining whether a person acted with the necessary intent, we must examine the totality of the circumstances, which may include factors such as

> evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his

*(Footnote Continued)* ───────────────

(providing that "[t]he [s]tatement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge" or such issue is waived); ***see also Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (holding that a Rule 1925(b) concise statement that does not "specify the element or elements upon which the evidence was insufficient" does not preserve the issue for appeal).

Moreover, even if Appellant had preserved his challenge to subsection 2702(a)(4), we would conclude that the Commonwealth produced sufficient evidence to sustain his conviction for the same reasons as subsection 2702(a)(1) as discussed *infra*.

statements before, during, or after the attack which might indicate his intent to inflict injury.

***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006) (quoting ***Commonwealth v. Alexander***, 383 A.2d 887, 889 (Pa. 1978)).

In the instant case, the Commonwealth established through the testimony of Lucas, Moore, and Smith that Appellant, while standing a foot and one-half away from Lucas, pointed his gun at Lucas's forehead, moved the gun to fire a shot into the air, resumed pointing the gun at Lucas's forehead while he told Lucas that he was going to "end it," and fired a second shot, this time inches from Lucas's head. ***See*** N.T., 8/10/2017, at 250-51 (testimony by Moore), 284-86 (testimony by Lucas); N.T., 8/11/2017, at 28-31 (testimony by Smith); ***see also*** N.T., 8/11/2017, at 58 (testimony of Jen Workman, a neighbor who said she saw from her window Appellant fire a shot in Lucas's direction); ***id.*** at 74-77 (testimony of Bingaman, Appellant's companion, who said he saw Appellant fire a shot in Lucas's direction).

"A gun is a lethal weapon; pointing it toward a person, and then discharging it, speaks volumes as to one's intention." ***Commonwealth v. Hall***, 830 A.2d 537, 543 (Pa. 2003). The jury was free to conclude that Lucas did not get hit because Appellant's aim was off or because Lucas moved when the gun was discharged, not because Appellant did not intend to shoot him in the head. ***See Commonwealth v. Thompson***, 739 A.2d 1023 (Pa. 1999) (finding sufficient evidence presented to convict Thompson

of aggravated assault where Thompson shot at and narrowly missed the victim); ***Commonwealth v. McCalman***, 795 A.2d 412, 415-16 (Pa. Super. 2002) ("It can be inferred that [McCalman] intended to cause serious bodily injury to [the victim] because the bullet he fired into the car missed her by only three inches.").

Additionally, despite Appellant's assertion in his brief, Smith's testimony did not clearly establish that Appellant moved the gun away from Lucas to avoid hitting Lucas. To the contrary, Smith testified that "the second [shot] looked like [it was] aimed at [Lucas's] head." N.T., 8/11/2017, at 28. Smith said that he did not know who moved first; he just knew that both Appellant and Lucas were moving as the second shot was fired and the bullet narrowly missed Lucas.[9] ***Id.*** at 30-31.

Even if Smith's testimony could be interpreted as Appellant's purposely moving his gun away from Lucas before shooting it, the jury was free to conclude that Appellant intended to commit serious bodily injury and took a substantial step toward that goal, even notwithstanding the direction of Appellant's second shot. ***See Matthew***, 909 A.2d at 1259 (holding that Matthew possessed the intent to inflict serious bodily injury in light of his threats to kill the victim while pointing a loaded gun at the victim, including pushing it against the victim's throat). Appellant's actions immediately prior

_____

[9] Appellant's movement could have been from recoil.

to firing the second shot, including his verbal threat issued while pointing his gun at a vital part of Lucas's body while he stood face to face with him, belie his contention that he did not possess the requisite intention to inflict serious injury upon Lucas. Moreover, the jury was entitled to disregard any portion of Smith's testimony and to believe the testimony of any of the witnesses who stated that Appellant fired his gun in Lucas's direction. Accordingly, we hold that the Commonwealth produced sufficient evidence to sustain Appellant's aggravated assault conviction.

Appellant's second issue raises a challenge to the weight of the evidence supporting his convictions. Appellant's Brief at 19-25. Emphasizing the testimony of Lucas and Bingaman, the trial court stated it was denying Appellant's post-sentence motion regarding weight because the jury's verdict did not shock its sense of justice. Trial Court Opinion and Order, 1/19/2018, at 4 (unnumbered).

"A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Commonwealth v. Williams**, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting **Commonwealth v. Lyons**, 833 A.2d 245, 258 (Pa. Super. 2003). We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

- 11 -

facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Appellant argues that the trial court abused its discretion in denying his challenge to the weight of the evidence due to conflicting evidence and a lack of objective corroborating evidence. Appellant's Brief at 25. In their brief written statements to police at the time of the incident, Lucas and Smith indicated that Appellant had fired his gun into the ground, which differed from their trial testimony that Appellant had fired one shot into the air and one shot near Lucas's head. *Id.* at 21-22. Appellant further argues that there were inconsistencies between witnesses as to how many shots were fired; some witnesses saw Appellant fire two shots and Bingaman fire two shots, but Workman, who observed from her window in a nearby house, only heard two shots fired total. *Id.* Finally, Appellant assails the lack of forensic and ballistics testing on the firearms recovered at the scene in light of the testimony of Schmidtberg, Appellant's friend who testified on behalf of

the defense, that he possessed the Taurus 93 pistol that night, not Appellant. *Id.* at 24.

"At trial, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." *Jacoby*, 170 A.3d at 1080. "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* Appellant cross-examined the witnesses extensively regarding their prior inconsistent statements and introduced their written statements as exhibits. The jury was permitted to credit the testimony of the Commonwealth's witnesses at trial notwithstanding their prior statements and minor inconsistencies between the testimonies. It also was permitted to credit the Commonwealth's witnesses instead of Appellant's witness. Assessing all of the evidence according to the governing principles cited above, we conclude that the trial court did not abuse its discretion when it concluded that the jury's verdict did not shock its sense of justice. Consequently, Appellant's weight challenge fails.

Appellant's final issue presents an evidentiary challenge. He contends the trial court erred in not granting his motion for a mistrial after it impermissibly permitted the Commonwealth to introduce evidence of a bad act without notice to the defense in violation of Pa.R.E. 404(b) (stating in pertinent part that "[e]vidence of [an] other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," and requiring the prosecution to

provide advance notice of the general nature of any evidence it intends to introduce at trial). Appellant's Brief at 26-28.

Appellant directs us to Bingaman's testimony that Appellant fired a gun on the night of the incident, and Bingaman's acknowledgement that his trial testimony was different than the statement he provided to police on the night of the incident. N.T., 8/11/2017, at 74-77, 88. When asked why he told police initially he did not remember seeing Appellant with a gun, Bingaman responded, "Because I was threatened not to say anything about the situation that went on. My family was threatened." *Id.* at 88. Appellant immediately objected and requested a sidebar. *Id.* At the sidebar, Appellant argued that the testimony constituted a prior bad act pursuant to Pa.R.E. 404(b) of which the defense had no notice, and moved for a mistrial.[10] *Id.* at 88-89. The Commonwealth responded by stating that it was not disclosed because it was a "concurrent act." *Id.* at 89. Observing that Bingaman did not identify who threatened him, the trial court denied the motion for a mistrial, sustained Appellant's objection and request to strike the testimony, ordered the Commonwealth not to pursue the issue any further, and instructed the jury to disregard the last remark. *Id.* In its contemporaneous instruction to the jury, the trial court told the jury to note

---

[10] Rule 404(b) prohibits the introduction of evidence of a defendant's other bad acts or crimes to establish the defendant's criminal character or proclivities. **See** Pa.R.E. 404(b)(1); **Commonwealth v. Hudson**, 955 A.2d 1031, 1034 (Pa. Super. 2008).

that Bingaman did not identify the person or persons who allegedly threatened him. *Id.* The trial court urges this Court to uphold its ruling, rationalizing that any prejudice to Appellant was rectified by its jury instruction. Trial Court Opinion, 3/26/2018, at 3 (unnumbered).

The following standards govern our review of the denial of a motion for mistrial.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes,* 135 A.3d 606, 615 (Pa. Super. 2016) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 475 (Pa. 2015). "The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not

be overturned absent an abuse of discretion." ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa. Super. 2008) (citation omitted).

Bingaman's statement was made in a passive voice without any identifying details as to who made the statement. Thus, we agree with the trial court that he did not implicate Appellant directly. Any potential prejudice to Appellant was rectified when the trial court instructed the jury to disregard Bingaman's statement and emphasized that Bingaman never identified who allegedly threatened him. ***See Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007) ("[A] mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.") (citation omitted). The law presumes that the jury follows the trial court's instructions. ***Commonwealth v. Bruno***, 94 A.3d 956, 977 (Pa. 2014). Accordingly, we discern no abuse of discretion in the trial court's refusal to grant a mistrial.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2018

- 16 -